| 43 | 99 |
|----|----|
| 129 | 17 |
| 43 | 99 |
| 139 | 551 |
| 43 | 99 |
| 162 | 308 |
| 43 | 99 |
| 100a | [3]289 |

Murray McConnel

*v.*

John H. Dickson *et al.*

1. Mortgage — *construction of condition.* A. C. D. and G. M. M., partners under name of A. C. D. & Co., being indebted to C. R. H. for lumber, gave their four notes for the same, dated January 15, 1860,—one for $4,000, due in thirty-three days; one for $3,870, due in six months; the third for $3,870, due November 15, 1860; and the fourth for $4,070, due February 15, 1861; M. M. signed each of said notes as security. A. C. D. and wife, for the purpose of securing M. M., executed to him a mortgage, which recites all the notes, the dates, and sums for which given, and the day each note becomes due; and after this recital contains this condition: "The said A. C. D. is bound to pay one-half of all and each of said several notes, and the said G. M. M. is bound to pay the other half thereof. Now if the said A. C. D. shall well and truly pay his said one-half of each of said notes when due, then this deed shall from thence forward be null and void; it being hereby fully understood that this deed of mortgage is to secure said M. M. against the payment of A. C. D.'s half of said notes only."

*Held,* that the payment of one-half of the whole sum due upon all the notes by A. C. D. was a performance of the condition, and discharged the mortgage.

2. Security — *upon payment of debt becomes a simple creditor.* Where a security for a firm pays the debt, he becomes the creditor of the firm, and is entitled to no greater rights than any other simple contract creditor of the same firm.

3. Chancery—*jurisdiction*—*remedy at law must first be exhausted.* Where a security pays the debt, he has no right to come into a court of chancery, in the first instance, seeking to subject the assets of the principal to the payment of his debt. Chancery has no jurisdiction in any such case. The remedy of the security is complete and ample at law.

4. Same—*rights of creditors.* The rule is inflexible, that a creditor must exhaust his remedy at law, before he can come into a court of chancery to reach equitable assets, or set aside a fraudulent conveyance.

Appeal from the Circuit Court of Morgan county; the Hon. David M. Woodson, Judge, presiding.

This was a bill in chancery, filed by Murray McConnel in the Circuit Court of Morgan county, against John H. Dickson, A. C. Dickson and George M. McConnel, alleging that John H. & A. C. Dickson, and Geo. M. McConnel, in February, 1860, entered into partnership, under the firm name of A. C. Dickson & Co. That said firm purchased of Charles R. Hurst lumber, and gave him four several notes, dated January 15, 1860,—one note due thirty-three days from date for $4,000; one note at six months for $3,870; third due November 15, 1860, for $3,870, and fourth note for $4,070, due February 15, 1861. That complainant signed each of said notes as security. That A. C. Dickson and wife, for the purpose of securing the complainant, executed a mortgage on certain lands in Jacksonville, and alleging that the condition of the mortgage was to secure him in one-half of whatever sum he might pay on said notes.

Charges that the firm of A. C. Dickson & Co. was dissolved November 19, 1860, and, by agreement, John H. Dickson took possession of the firm assets, and had not paid the firm debts.

That, on May 31, 1861, A. C. Dickson and wife conveyed the mortgaged premises to John H. Dickson. Charges that neither party has property in Illinois, and that complainant had no remedy at law. Bill prayed for foreclosure and sale of mortgaged premises to pay $2,694.90.

The condition of the mortgage recites the making of said notes by the said firm, consisting of A. C. Dickson & Geo. M. McConnel, and recites, that "The said Dickson is bound to pay

one-half of all of and each of said several notes, and the said Geo. M. McConnel is bound to pay the other half thereof. Now if the said Dickson shall well and wholly pay his said one-half of each of said notes when due, then this one shall from thenceforward be null and void, it being hereby fully understood that this deed of mortgage is to secure said McConnel against the payment of Dickson's half of said notes only." The contract of dissolution of said firm is set out in the bill; summons was issued and returned served on Geo. McConnel; the other defendants were made parties by publication.

John H. Dickson filed his separate answer October 12, 1864, admitting the execution of the notes by the other defendants; and of the mortgage by A. C. Dickson and wife; and that, at a subsequent date, he bought an interest in the firm, and then signed said notes. Alleges that the mortgage was only to secure payment of one-half of said notes. States that the first and second notes were paid by the firm; and that on March 3, 1863, respondent paid to the holder $5,100, on the other two notes, out of the proceeds of the sale of A. C. Dickson's separate property, being part of the mortgaged property released from the same, which paid the fourth note of $4,070, and all of the third note but a little over $2,500; and that this sum fully paid off said mortgage. Admits conveyance of the property, to the respondent, subject to the mortgage; and alleges, that it was for a full consideration. Says that the respondent had sold the same, and Matilda E. Dickson had an interest in the property, and was a necessary party; and prays that the bill be dismissed. Complainant excepted to the answer, first, because the answer set up no defense to the bill; and second, because Mrs. Dickson could not acquire any interest in said property, to the prejudice of the complainant. Exception overruled; and complainant asked leave to make Matilda E. Dickson and H. E. Dummer parties defendant; and by leave of the court filed his amended bill, praying that Matilda E. Dickson answer and state what interest she had in said property; and alleging that she had relinquished her homestead in said property; and that the deed to her was fraudulent and void, as to the com-

plainant; and charging that she was the wife of defendant, A. C. Dickson; and asked that she be required to answer and say from whom she acquired title; and the consideration she paid for the same; and alleging that John H. Dickson paid no consideration for said deed; but held the same for the use, and to be applied to payment of Hurst's notes; and that John H. Dickson was trustee for the complainant, in holding said real estate; and that John H. Dickson refused to carry out said trust; that John H. Dickson held assets of the firm of A. C. Dickson & Co., and had not settled the debts. Charges that J. H. Dickson has conveyed property to H. E. Dummer, who has possession of the same. Charges that Geo. M. McConnel is insolvent. Claims right to have this real estate sold under decree to pay the alleged debt due him. Claims that he has no remedy at law, and has a remedy in equity. Claims that Matilda E. Dickson cannot hold any interest in the same as against complainant. Claims that John H. Dickson shall account for any assets he may have received from the firm of A. C. Dickson & Co.

John H. Dickson filed his separate answer to the amended bill; alleging that he paid A. C. Dickson for the deed of May 31, 1866, $2,900, and over for said property; taking the same subject to the mortgage of the complainant. Says that at that time suit was pending by M. E. Dickson against A. C. Dickson, for divorce and alimony, and an injunction sued out and served, restraining A. C. Dickson from selling said property. That Mrs. A. C. Dickson agreed to said sale, and joined in said deed, upon the understanding that the respondent should allow her to occupy the same until sold, and after payment of the money paid by the respondent, and ten per cent interest, and taxes, and whatever might be due on the mortgage, the balance was to be paid to her; that respondent took said deed and agreed to said terms with said Matilda, and put her in possession. Says he sold part of said real estate for $5,100, and paid the same on the third and fourth notes; the first and second having been paid by the firm; which more than paid by A. C. Dickson's one-half of said notes; and that mortgage was paid. That Geo. M. McConnel was behind with said firm; that, that

sum paid, not only overpaid A. C. Dickson's part, but respondent's also. Denies all fraud. Says that amended bill is multifarious; and that respondent is not bound to swear to that part of the same in regard to the assets of the firm of A. C. Dickson & Co.; and that complainant has full remedy at law. Says that Matilda E. Dickson and A. C. Dickson were divorced under proceedings of the Morgan Circuit Court, and prays that the bill be dismissed. Answer sworn to. Matilda E. Dickson answered, stating substantially the same facts in relation to sale of mortgaged premises, as those mentioned in answer of J. H. Dickson; and claims that she is entitled to the remainder of the proceeds of the sale, after payment of the balance due on the mortgage, and the debt, interest and taxes to John H. Dickson. That she had asserted her claims in the courts before complainant acquired any rights; that she was entitled to dower and homestead in said premises, which she had released on consideration of the undertakings of J. H. Dickson; that she was entitled to have all of said proceeds, over and above $3,824.98½, being *one-half of* sum due on the mortgage, but that she had consented that $5,100 might be, and the same was, applied on same. Answer sworn to.

Complainant April 13, 1866, asked leave to file a supplemental bill, and moved for a rule on J. H. and M. E. Dickson, to answer the same; and said defendants entered a cross motion to strike the supplemental bill from the files, the motion and cross motion were submitted to be decided in vacation. The supplemental bill reiterates the charges in the original and amended bills; and charges that the deed to John H. Dickson was fraudulent and void; and that the firm of A. C. Dickson & Co. were insolvent. That he has a right to come into equity without resorting to law, and prays that the deed be set aside.

At the May Special Term the court sustained the motion of the defendants to strike the supplemental bill from the files; and overruled the motion for a rule to answer. Complainant excepted and filed a replication, and the cause was set down for hearing at next term.

Dummer answered, saying he had purchased part of the

property, and that, by stipulation, a part of the purchase money was unpaid until this suit was determined.

### AGREED EVIDENCE.

Agreed that notes were originally given by A. C. Dickson & G. M. McConnel, as firm of A. C. Dickson & Co., with the complainant as security. Mortgage was given at date of notes. Afterward J. H. Dickson was admitted a member of the firm. First and second notes were paid by the firm, with the funds of the firm, and a part of the third note was also paid by the firm.

On March 3d, 1864, J. H. Dickson by his attorney, paid $5,100 on the last two notes, out of the proceeds of sale of mortgaged property sold, except lot 75 and E. ½ 76, in Chandler's addition to Jacksonville, described in the bill. This sum paid all of said Hurst debt except $2,535.75, balance due March 3, 1863. This last sum was paid by McConnel at a subsequent date, with accrued interest. At the time of the payment of the $5,100, the fourth note for $4,070 was surrendered, leaving third note outstanding, with balance as aforesaid unpaid.

Deed from A. C. Dickson and wife to John H. Dickson is admitted, and included all of A. C. Dickson's real estate, except ten acres of land in Chicago, which last had been sold on *fi. fa.*, before the complainant paid Hurst.

Admitted that firm of A. C. Dickson & Co. dissolved Nov. 19, 1860, and assets went into the hands of J. H. Dickson; that J. H. Dickson and M. E. Dickson had sold the lots in Chandler's addition to Jacksonville, to Dummer; that $3,000 remained unpaid on purchase money; that all the mortgaged property was sold by J. H. Dickson except said lot for $5,100, and the proceeds applied as stated in J. H. Dickson's answer; that, prior to the date of the deed of May 31, 1861, proceedings were pending between M. E. Dickson and A. C. Dickson for divorce and alimony; and A. C. Dickson had been enjoined from selling his property; that M. E. Dickson consented to said sale to J. H. Dickson on condition that he would provide for her in the manner mentioned in the answer of the defend-

ants; that J. H. Dickson paid for said deed $2,925.88; and took said deed subject to whatever might be due on said mortgage, and then gave his bond to G. W. S. Callen as trustee, as mentioned in the answer of defendants; that a decree was subsequently entered, divorcing Matilda E. Dickson from the defendant, A. C. Dickson. It is admitted that the complainant has obtained no judgment at law against any of the members of said firm; nor instituted any suit on said demand against any member of the same; for the purposes of this suit, only, it is admitted that said firm are insolvent. Said papers were admitted, and either party to have the right to except to any of said papers as legally admissible; the court, on a hearing of the cause, dismissed complainant's bills; the cause is brought to this court by appeal.

Murray McConnel, *pro se.*

It is anticipated that the defendants will attempt to deny the jurisdiction of the Court of Chancery over this case, upon the ground that it is in the nature of a creditor's bill against the firm of A. C. Dickson & Co., and that the complainant should have first resorted to a court of law and obtained a judgment and execution.

This is not what is technically known as a creditor's bill, but in a creditor's bill it is not always necessary to show that the creditor has sued, and got a judgment and execution at law, before applying to chancery. The original bill in this case was filed to procure a construction of, and to foreclose, the mortgage made by A. C. Dickson and wife to complainant. The Court of Chancery certainly had original jurisdiction for this object.

The second object of the bill was to require John H. Dickson, as the trustee of the firm of A. C. Dickson & Co., to account for the property received by him from said firm on the 19th of November, 1860, as shown by his written contract, signed by all the parties of said firm, by which said John H. Dickson bound himself to sell said property and pay the debts of the firm.

The Court of Chancery had original jurisdiction over this question, and any one of the creditors of A. C. Dickson & Co. had a right to file a bill requiring said trustee to account for said property, and carry out the terms of said trust by paying the debts so far as those assets would do so, without first resorting to a court of law, and upon this point the following authorities are referred to: *Russell* v. *Clark, Exr.*, 7 Cranch, 97, 98; *S. C.*, 2 Curtis' Decisions U. S. Supreme Court, 462, 467; Story's Equity Jurisprudence, § 64 K; *Leach* v. *Thomas*, 27 Ill. 461; *Thorp et al.* v. *McCullum et al.*, 1 Gilm. 625; *Kimball* v. *Mulhern et al.*, 15 Ill. 208.

Messrs. Morrison & Epler, for the appellees.

Matilda E. Dickson, having executed the mortgage, was an indispensable party to a bill to foreclose the same. Yet Mrs. Dickson was in no wise related to or connected with the unsettled affairs of the firm of A. C. Dickson & Co., and therefore could not be made a party to a bill to settle affairs of that firm. The original and amended bill, having sought to foreclose the mortgage, and also to compel John H. Dickson to account for assets of A. C. Dickson & Co., was multifarious and should have been dismissed. See *Supervisors of Whitesides Co.* v. *States' Attorney*, 31 Ill. 68; *Finch* v. *Martin*, 19 id. 111.

But it is clear that complainant cannot maintain his standing in a court of equity. By payment of the money as security for the firm of A. C. Dickson & Co., he became a simple contract creditor of the firm, and, to enable him to proceed against equitable assets, supposing there be such assets, it is indispensable that he exhaust his remedy at law. He must obtain judgment and sue out execution. See *Bigelow* v. *Andress*, 31 Ill. 322; *Greenway* v. *Thomas*, 14 id. 271; *Miller* v. *Davidson*, 3 Gilm. 515; *Ohling* v. *Luitjens*, 32 Ill. 23. Complainant cannot relieve himself from this necessity by alleging insolvency of defendants. The bill charges that the conveyance to Matilda Dickson was fraudulent and void. If so, a judgment at law would have reached the property conveyed. *Greenway* v. *Thomas*, 14 Ill. 271.

The court below had no jurisdiction. The objection was taken to the original and amended bills, and they were properly dismissed.

Mr. Justice Breese delivered the opinion of the Court:

The appellant in this case was the security on four certain notes executed on behalf of the firm of A. C. Dickson & Co., lumber merchants, of St. Louis, to Charles R. Hurst. This firm was composed of A. C. and John H. Dickson and George M. McConnel, who signed the notes by their individual names. To secure appellant, A. C. Dickson, then the owner of valuable real estate in Jacksonville, his wife, in February, 1860, while the notes were maturing, executed to complainant a mortgage upon this Jacksonville property. The mortgage recites all of these notes, the dates and sums for which given, and the day each note became due, and contains this condition after their recital. That the said A. C. Dickson is bound to pay one-half of all and each of said several notes, and the said George M. McConnel is bound to pay the other half thereof. Now, if the said Dickson shall well and truly pay his said one-half of said notes when due, then this deed shall from thenceforward be null and void, it being hereby fully understood that the said mortgage is to secure said George M. McConnel against the payment of one-half of said notes only, as aforesaid."

The controversy arises in the first instance on the construction to be placed on this clause of the mortgage, appellant contending that Dickson was to pay one-half of each note, *eo nomine*, and that the fact that he has paid one-half of the whole sum due upon all the notes is no performance of the condition.

It is very evident to our minds, from the terms of this condition, especially the last clause of it, that it was the intention of these parties that whenever one-half the debt specified by these notes was paid by Dickson, the mortgage was to be null and void. All that Dickson designed to secure appellant in was one-half of this Hurst debt,—it was to secure that that the

mortgage was executed, and, although he agreed to pay one-half of each note, he never agreed to pay more than one-half of the debt of which those notes were the evidence. Having paid one-half of this debt due by those notes, before the bill was filed, complainant was not entitled to any decree, there being nothing due on the mortgage.

It appears by the pleadings, that in November, 1860, the firm of A. C. Dickson & Co. made an assignment of all the property of the firm to the partner, John H. Dickson, and dissolved. John H. accepted the trust, and took possession of a large amount of property included in the assignment, stated in the bill to be of the value of $15,000, and entered into a written contract to sell the same on certain terms of credit, at auction, and to collect and use the proceeds to pay all the debts of the firm, these Hurst notes included, the third note, payable to Hurst for $3,870, being then not fully paid. It is alleged that the assignee sold this property and applied the proceeds to his own use, and in May, 1861, A. C. Dickson and wife conveyed by deed to the same John H. Dickson all the real estate described in the mortgage to complainant, and A. C. Dickson then became insolvent, and had no property subject to execution, and left the State, and that John H. was also insolvent, and was endeavoring to sell all this property and to defraud the complainant out of the money he had paid as security, and that George M. McConnel is insolvent.

The complainant sought by his bill (he having paid the balance of the third note, being about nine hundred dollars, to Hurst, as security for the firm,) to be substituted in the place of Hurst, and to be entitled to all his remedies as against the assets in the hands of Dickson, the assignee.

A plain answer and refutation of this claim of complainant exists in the fact that there is no place for such subrogation, for when Hurst was paid by complainant, Hurst ceased to have any interest in the assets. The doctrine, as cited from 7 Cranch, 69, *Russell* v. *Clark's executors*, has not the slightest application to this case. In that it is said, and correctly, that the person for whose benefit a trust is created, who is to be the

ultimate receiver of the money, may sustain a suit in equity to have it paid directly to him. But that is not this case. Here the complainant stands as a creditor of this firm, he having paid Hurst a debt they were bound to pay, and in this respect he stands in no different or better position than thousands of persons who have paid debts for which they were security. On paying the debt complainant became the creditor of the firm, and entitled to no greater rights than any other simple contract creditor of the same firm. The case is yet to be found, adjudged by any respectable court, recognizing the right of such a creditor to come into a court of chancery, in the first instance, seeking to subject the assets of the firm to the payment of his debt. Chancery has no jurisdiction in any such case.

The remedy of the complainant is complete and ample at law. When he shall have obtained judgment against the firm for this money so laid out and expended for their use, he can levy his execution on this property, alleged to have been fraudulently assigned and appropriated by the assignee to his own use. This fraud, if proved, would not protect the assignment. If the assignee has conveyed it to innocent parties, or fraudulently, and no fruits follow an execution, then complainant can come in with his bill of complaint, known as a creditor's bill, and pursue the property. To this effect, are sections 36 and 37 of our Chancery Code; and such is the course of proceeding in all the States of this Union and in England. The rule is inflexible in such cases, that a creditor must exhaust his remedy at law before he can come into a court of chancery to reach equitable assets, or set aside a fraudulent conveyance. Cases are abundant on this point. We cite a few of them. *Stone* v. *Manning*, 2 Scam. 531; *Miller* v. *Davidson*, 3 Gilm. 518; *Manchester* v. *McKee, Exr.*, 4 id. 511; *Bigelow* v. *Andress*, 31 Ill. 330.

Complainant had the right to file a bill against John H. Dickson, as assignee of the partnership, to compel performance of the trust, but he does not show there are any partnership assets. He is simply a creditor of the firm to the extent of the debt paid by him to Hurst, but before he can maintain a bill in chancery to reach equitable assets, or to set aside a fraudu-

lent conveyance, he must exhaust his remedy at law. The scope of the second amended and supplemental bills being for relief solely on the last ground, the court did not err in dismissing the bill.

These views render it unnecessary to consider the question of the validity of A. C. Dickson's deed for the use of his wife, or the deed to Dummer, or any question made to which these give rise, as the complainant is not in a position to attack any of them.

For the reasons given the decree of the Circuit Court must be affirmed.

*Decree affirmed.*