SALINAS et al. v. STILLMAN et al.

(Circuit Court of Appeals, Fifth Circuit. December 31, 1894.)

No. 263.

**1.** MISTAKE—SUFFICIENCY OF ALLEGATIONS—LACHES.

Congress made an appropriation to acquire title to the Ft. B. reservation. After the act was passed, seven persons, heirs of one S., brought an action of trespass to try title to the reservation, against K., the commanding officer of the troops stationed thereon, in which several other persons intervened, claiming title. When the case was about to come on for trial, two of the plaintiffs and nearly all the interveners entered into an agreement, for the purpose of securing promptly a judgment which would make it possible to give a title acceptable to the United States, and to secure the appropriation, by which they undertook to co-operate on the trial in securing a verdict which would vest the title in two of the interveners, and, after such verdict had been secured, and the title passed and money paid, to submit their respective claims to certain arbitrators, who should divide the money between them. This agreement was not communicated to the court. The trial resulted in a verdict for the two chosen interveners, the land was conveyed to the government, and the money paid. Seven years later two of the plaintiffs in the action of trespass, one of whom was a party to the agreement, and an intervener in that action, who was also a party to the agreement, brought this suit to set aside the agreement for mistake, and the judgment in the action of trespass for mistake, and as a fraud upon the court. The only allegation as to mistake was that, for want of counsel and well-considered legal advice, W. (one of the complainants) was led into error in signing the agreement. *Held,* that, in view of the length of time elapsing before any attack was made on the proceedings, and the indefiniteness of the allegation of mistake, no case was made for setting aside the agreement or judgment on the ground of mistake.

**2.** PRACTICE—DECEIVING COURT—AGREEMENT TO AVOID LITIGATION.

*Held,* further, that there was no necessity for bringing the agreement to the attention of the court which tried the action of trespass, and its execution was not a fraud upon the court.

**3.** PUBLIC POLICY—SERVICES IN SECURING LEGISLATION.

The act making the appropriation provided that it should be paid directly to the owners of the property. The agreement between the parties to the action of trespass provided that, as soon as the money was received from the government, a considerable sum should be paid to an agent who assisted in procuring the appropriation. *Held* that, in the absence of any averment as to the nature of the services of such agent, it would not be presumed that his services were illegal, and that this provision constituted no objection to the agreement.

Appeal from the Circuit Court of the United States for the Western District of Texas.

The preliminary facts appear to be as follows:

On March 3, 1885, the congress of the United States made the following appropriation:

"To enable the secretary of war to acquire good and valid title for the United States to the Fort Brown reservation, Texas, and to pay and extinguish all claims for the use and occupancy of said reservation by the United States, the sum of one hundred and sixty thousand dollars; provided, that no part of this sum shall be paid until a complete title is vested in the United States; and the full amount of the price including rent shall be paid directly to the owners of the property." 23 Stat. 507.

On June 30, 1886, the heirs of Miguel Salinas, to the number of seven, brought an action of trespass to try title in the district court of Cameron county, state of Texas, against W. L. Kellogg, commanding officer at Ft. Brown, to recover possession and title, fruits, and revenues of certain lands

described, which comprised the Ft. Brown reservation. This suit was afterwards removed into the United States circuit court for the Western district of Texas, and therein numerous persons, to the number of 22, intervened, claiming title. On July 13, 1887, two of the plaintiffs and nearly all of the interveners entered into an agreement, a copy of which, as an exhibit to the bill, is found in the record, the reasons for which agreement are found in the preamble thereto, as follows:

"That whereas, in March, 1885, the congress of the United States made an appropriation of the sum of one hundred and sixty thousand dollars ($160,000) to get a good clear title, free of all arrears, to the property known as 'Fort Brown,' which property and the title thereof are in litigation in this suit, and it is apprehended that unless in this court and by the judgment thereof a perfect title can be adjudged to certain of the parties, so as to meet the requirements of the Washington authorities, there is great danger of losing the said appropriation altogether; and whereas, this court will not last further than this week, and there is little probability of the parties to this agreement. who claim title to the whole of said property and the said money, working out to a complete and accurate adjudication by the judgment of this court, to be based on the verdict of the inevitable jury, all the rights of each party hereto who claim fractional interests in the said property, and it is therefore primarily desirable and necessary to have such a verdict and judgment in this action as will be attended with no complications, and be satisfactory to the department at Washington, and secondarily desirable to agree upon a method of working out and ascertaining the exact rights and interests of each party hereto after the judgment, and the conveyance to the government by the parties so adjudicated to be the owners, and the payment of said money therefor; and whereas, the sum of twenty thousand dollars ($20,000) will then be due and owing to certain agents at Washington, who assisted in procuring the said appropriation, who must first be paid from said fund when received; and whereas, there are certain parties to this action who claim interests in said property hostile and antagonistic to the interests of the parties hereto, which claims we believe will fail on the trial now presently to come off: Now, therefore, it is mutually stipulated and agreed by the parties represented in this agreement as follows," etc.

And in said agreement it was stipulated that all parties thereto should unite in promoting and procuring a verdict and judgment in the cause to the effect that the whole of said property and all dues thereto appertaining should be vested in and be held by James Stillman, of New York, and Thomas Carson, administrator with will annexed of the late Mrs. Maria Josefa Cavazos, deceased, who were styled "reconvening defendants" in said action; that, upon thus procuring such a verdict and judgment, the appropriate deed of conveyance should be made by said owners to the United States, and the usual warrant of the secretary of war upon the treasurer of the United States for the amount of said appropriation procured and obtained, and the sum of $20,000 due as aforesaid at Washington immediately paid from said funds by the arbitrators thereinafter named; that the balance of said fund should be deposited without delay in the banking house of Ball, Hutchings & Co., of the city of Galveston, to the credit of certain named arbitrators, to wit, Messrs. Wm. P. Ballinger, T. N. Waul, and David B. Culberson; that the parties to the agreement should submit their claims to these arbitrators, the arbitrators should meet as early as practicable, and the money should be divided between the claimants in proportion to the interest of each, as determined by the arbitrators, whose findings should be binding and conclusive. The agreement made provision for supplying the place of any arbitrator who was unwilling or failed to act. On the day following the date of the agreement, a trial was had of the action pending in the court before a jury, wherein, as the plaintiffs made no appearance, the cause was heard upon the pleas of reconvention of all the interveners, and a verdict rendered in favor of Stillman and Carson, administrator, etc., in the proportion of one undivided half each of the property in suit. Following the verdict, judgment was rendered against the plaintiffs, defendants, and other interveners, in favor of Stillman and Carson, administrator, etc.

On January 12, 1894, the present bill was filed by three joint complainants, to wit, Juan Salinas, who was one of the parties plaintiff in the suit at law,

and also one of the parties to the agreement in question; Vincente Salinas, who was one of the plaintiffs in the suit at law, but who denies that he was a party to the agreement in question; and H. E. Woodhouse, who was an intervener in the suit and a party to the agreement, attacking the said agreement for mistake upon the part of Juan Salinas and Henry E. Woodhouse in signing the same, and for inherent vices, and attacking the judgment as a fraud upon the court, because the agreement mentioned was not brought to the knowledge of the court and jury on the trial, thereby, as alleged, preventing a judicial determination of the issues as formed by the pleadings. The bill makes no defendants eo nomine, and prays for no process against any one, though in the middle of the bill there is a recital of the names of many persons who had become parties to the action at law, including the United States, but not disclosing the relations or interests of any one of them; and it is then averred that "said parties are now made parties hereto, together with Henry Wagner, of Cameron county, Texas." The only averment in the bill relating to any interest in the subject-matter of Henry Wagner is as follows: "Your petitioners further say that Henry Wagner is a resident citizen of Cameron county, Texas, and the city of Brownsville; is a successor of Wm. L. Kellogg, and one of the successors of ·Zachary Taylor, aforesaid; is now in possession of the land in suit of The Heirs of Miguel Salinas v. Wm. L. Kellogg, which is made the subject of petitioners' claims herein." The bill prays for relief as follows: "In consideration of the foregoing, and inasmuch as your petitioners are without legal remedy, these petitioners pray that said alleged judgment so rendered on the 14th day of July, 1887, be set aside, vacated, annulled, and held for naught; that your petitioners be accorded and afforded opportunity to proceed with the trial of petitioners' rights as set out and claimed in this petition, and in the original petition in the The Heirs of Miguel Salinas v. Wm. L. Kellogg, and in the intervention of H. E. Woodhouse filed in said cause, a copy of which original petition is attached, made an Exhibit A, and made a part hereof; and for any and all relief which to your honors seem just and equitable." Although no process appears to have been prayed for, issued, or served, Henry Wagner appeared and filed a general demurrer to the bill for want of equity. Thomas Carson, as administrator with the will annexed of Maria Josefa Cavazos, deceased, also appeared and filed general and special demurrers. The circuit court sustained the general demurrers of Wagner and Carson, some of the special demurrers of Carson, and, the complainants declining to amend, dismissed the bill. The complainants appeal to this court, assigning as errors, in substance, that the circuit court erred in sustaining the demurrers to the bill.

T. J. McMinn, for appellants.

H. J. Leovy and J. P. Blair, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The complainants' bill is framed in disregard of the equity rules of the supreme court of the United States and the generally recognized rules of equity pleading, but we gather from it that the complainants therein are seeking to set aside and annul a judgment, rendered at law in an action in which they and many others were parties, because the judgment was preceded by an agreement between some of the parties to the action in which provision was made for the recovery of the title, rents, and profits of real estate in favor of two of the parties thereto, to the exclusion of the rest, but under which eventual distribution should be made to all the parties according to interest as determined by the arbitration therein provided for. The agreement is attacked because of al-

leged error and mistake on the part of the complainants, in that, at the time of signing the same, the complainants were misled and misinformed as to the real purport and effect of the agreement by reason of the absence at the time of their counsel previously employed, and by the representations and persuasion of the attorneys of other parties; because the agreement was calculated to operate a fraud upon the court in the trial of the action then pending at law; because certain provisions therein contained were against public policy; because two of the arbitrators named in the agreement were of counsel for certain of the parties in interest; and because the provisions with regard to arbitration were not otherwise in accordance with the provisions of the Revised Statutes of Texas relating to arbitrations. It is also intimated in the bill that by reason of the agreement the title eventually to be given the United States would be in some way defective. The claim that the agreement was void for mistake on the part of the complainants in not being informed as to its real purport and effect, even if otherwise sufficient to warrant relief,—which is doubtful,— loses nearly, if not all, of its force when we consider the length of time which elapsed between the agreement and the institution of the present suit,. to say nothing of the averments in the bill, in which it clearly appears that the complainants' real grievance is that the principal parties thereto did not at the time intend to carry out the agreement, and that they have during all these years delayed and refused to carry out the same. Besides this, the averments of the bill with regard to error and mistake on the part of the complainants are altogether too indefinite and general in regard to any mistake upon the part of the complainants.

We have searched the bill in vain to find a specific averment that at any time any or either of the complainants was actually misled or deceived as to the purport and effect of the agreement. The averment that "for want of counsel, and on account of the absence of well-prepared and well-considered legal advice, petitioner Woodhouse was led into error," is the nearest approach to any averment of the kind, and that is wholly insufficient. The agreement being between only two of the plaintiffs and part of the interveners in the action at law, and providing only for an ascertainment of the interest of the parties to the same after a favorable verdict should be obtained in the action, we are wholly unable to see that there was any necessity whatever for bringing the agreement to the notice of the court, or any impropriety whatever in failing to have it entered of record. So far as it was an attempt by the parties to settle their difference out of court by arbitration, or in any other amicable manner, the proceeding is to be commended rather than adversely criticised. Parties may adjust their differences out of court, and afterwards give effect to the settlement by a judgment or decree of court, which will be as binding and conclusive as any other adjudication. Nashville, C. & St. L. R. Co. v. U. S., 113 U. S. 261, 5 Sup. Ct. 460. The contention that the agreement was against public policy seems to be wholly based upon the fact that by the terms of the same a portion of the

moneys eventually to be derived from the United States for the purchase of the Ft. Brown reservation was to be paid to certain agents at Washington who assisted in procuring the said appropriation. It is true that the act of congress making the appropriation provides that the "full amount of the price including rent shall be paid direct to the owners of the property"; it is also true that contracts for services in procuring legislation by lobbying are against public policy; but, conceding this, it by no means follows that any fraud could or would have been perpetrated on the United States if, after the money had been paid by the United States directly to the owners of the property, the owners of the property had thereupon recognized and paid for legitimate services rendered by agents in procuring the appropriation. In the case of Trist v. Child, 21 Wall. 441, the distinction is clearly recognized between contracts for lobbying services and contracts for professional or other services legitimately rendered by agents. The bill is silent as to the character of the services rendered in Washington for which payment was to be made. We naturally indulge in the presumption that they were lawful. At the same time it is to be noticed that if the complainants' charge that the agreement was against public policy, and a fraud upon the government, is well founded, it by no means follows that the complainants in the present case can obtain relief on that ground. On the contrary, the court would be likely to apply the maxim in pari delicto against at least two of the complainants. The charge that two of the arbitrators named in the agreement were of counsel for parties in interest, and therefore disqualified to act, is without any merit, particularly when taken in connection with the fact that the bill utterly fails to show that the complainants were unaware of such employment and interest at the time the agreement was entered into.

It is true that the Revised Statutes of the state of Texas provide a mode of submitting causes for arbitration, which statutes do not appear to have been complied with in toto in the agreement in question; but the last article (56) of the title on the subject concludes as follows:

"Nothing herein shall be construed as affecting the existing right of parties to arbitrate their differences in such other mode as they may select." See Rev. St. Tex. tit. "Arbitration."

We are of opinion that the circuit court ruled correctly on the general and special demurrers to the complainants' bill, and that the assignments of error in this court are not well taken. As the complainants refused to amend in the circuit court, and stood on their bill, which was clearly defective in substance and for want of parties and as to the relief sought, we are constrained to sustain the circuit court in dismissing the bill. At the same time, we notice that, under the facts recited in the bill, the complainants have an equity which may hereafter require judicial recognition. The agreement attacked undoubtedly created a trust in favor of the parties thereto, and equity may require that such trust shall be recognized and enforced. In a suit for such purpose, the de-

cree dismissing the bill in the present case without reservation may be interposed, and perhaps with effect, as res judicata against the present complainants. To avoid this, and to save any equitable rights the complainants may actually have, a majority of this court are of opinion that the decree should be amended so as to show that the bill was dismissed without prejudice, but at complainants' cost. The decree of the circuit court appealed from is reversed, and a decree is rendered in favor of Henry Wagner and Thomas Carson, administrator with the will annexed of Maria Josefa Cavazos, deceased, dismissing the complainants' bill without prejudice, but with costs of this and the circuit court.