(December 3, 1898.)

## BRADY v. YOST.

[55 Pac. 542.]

PUBLIC INTEREST—CONTRACT.—B. entered into a contract with Y. for the purchase of the material and fixtures constituting the newspaper publishing plant of the "Silver Blade" newspaper, and as a part of the consideration agreed to obtain for Y. the contract to publish certain classification lists of mineral lands. And Y. on his part agreed to bid for the county printing of Kootenai county, and in case he was awarded said printing, he would assign the contract to B., provided B. complied with his part of said contract and purchased said newspaper plant. B. performed all the conditions of said contract agreed to be performed by him, and Y. thereupon refused to turn over said property to B., on the ground that said contract was contrary to public interest or policy, illegal and void. *Held*, under the facts of this case said contract was legal, valid and not in conflict with public interest.

ILLEGAL CONTRACT.—Any agreement respecting public contracts to be awarded on bids which tends to deprive the people of the advantage of competition in bidding is unlawful and void.

SPECIFIC PERFORMANCE.—A court of equity will decree a specific performance of a contract for the sale of chattels when damages at law will not afford a complete and adequate remedy.

SPECIAL FINDINGS BY JURY.—In equity suits the specific findings of a jury are advisory only. The court may disregard such findings when they are clearly against the evidence. Section 4396, Revised Statutes, recognizes a distinction between law and equity.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

Charles L. Heitman, for Appellant.

Where one copy of a contract which is to be executed in duplicate has been signed by the parties, but is left with the attorney of one party to have a duplicate executed, there is not a sufficient delivery of the instrument to constitute a contract. (*Lamar Milling etc. Co. v. Craddock*, 5 Colo. App. 203, 37 Pac. 950.) Every new contract seeking to carry out or enforce any of the unexecuted provisions of a former illegal contract is void. (*Gray v. Hook*, 4 N. Y. 450; 3 Am. & Eng. Ency. of Law, 887;

*Comstock v. Draper,* 1 Mich. 481, 53 Am. Dec. 78; *Moffatt v. Bulson,* 96 Cal. 106, 31 Am. St. Rep. 192, 30 Pac. 1022.) It is well settled that any agreement to attempt, for a compensation, to influence a public officer in the performance of a duty, or the execution of a power, is contrary to public policy, and therefore, illegal and void. (*Tool Co. v. Norris,* 2 Wall. 45; *Oscanyon v. Arms Co.,* 103 U. S. 261; 3 Am. & Eng. Ency. of Law, 877; 9 Am. & Eng. Ency. of Law, 908, 915; *Clippinger v. Hepbaugh,* 5 Watts & S. 315, 40 Am. Dec. 519; *O'Hara v. Carpenter,* 23 Mich. 410, 9 Am. Rep. 89; *Brooks v. Cooper,* 50 N. J. Eq. 761, 35 Am. St. Rep. 793, 26 Atl. 978.) An agreement whose object is to induce any officer of the state to act partially or corruptly is void. (3 Am. & Eng. Ency. of Law, 877.) An agreement which has a tendency that way· is void. (*O'Hara v. Carpenter,* 23 Mich. 410, 9 Am. Rep. 89.) It is well settled that any agreement, respecting government contracts to be awarded to the lowest bidder, which tends to deprive the government of the advantage of competition in the bidding is unlawful and void. (*Swan v. Chorpeming,* 20 Cal. 182; *Brooks v. Cooper,* 50 N. J. Eq. 761, 35 Am. St. Rep. 793, 26 Atl. 978; *Hunter v. Pfeiffer,* 108 Ind. 197, 9 N. E. 124; *Boyle v. Adams,* 50 Minn. 255, 52 N. W. 860; *Brisbane v. Adams,* 3 N. Y. 129.) The correct manner of presenting issues of fact in cases of chancery to the jury is now well established to be by interrogatories and the interrogatories should cover all material questions in dispute. (*Kelly v. Perrault,* 5 Idaho, 221, 48 Pac. 45.)

W. W. Woods, for Respondent.

Appellant claims that equity will not decree specific performance of a contract relating to chattels, citing 3 Pomeroy's Equity Jurisprudence and other authorities. This is true as a general proposition, but the exceptions are provided for so plainly as to leave no doubt as to the class of cases in which specific performance will be decreed as a matter of course by a court of equity. (Pomeroy's Equity Jurisprudence, sec. 1404; *Treasurer v. Com. M. Co.,* 23 Cal. 391; 2 Kent's Commentaries, 9th ed., 661; 2 Story's Equity Jurisprudence, sec. 717; *Senter*

*v. Davis,* 38 Cal. 450.) The contract in the present case, as well as the means by which it was executed, were in no sense illegal or in conflict with public interest. (*Stanton v. Embry,* 93 U. S. 543; *Salinas v. Stedman,* 66 Fed. 677; *Twist v. Child,* 21 Wall. 441; *Cheeseborough v. Conover,* 140 N. Y. 382, 35 N. E. 633.) This action is equitable for specific performance of contract relative to chattels. Section 4369 of the Revised Statutes of Idaho does not change the rule in equity that in such an action the findings of a jury are advisory to the court. In this class of actions the findings of the jury being advisory, the court, sitting as chancellor adopts, rejects, modifies, ignores or makes new findings. The fact that this suit was tried with an advisory jury would imply, in the strongest terms, that a general verdict was waived. Unless the contention urged by appellant in this court upon this point had been made in the court below it could not be presented to or considered by this court. There is nothing in the record by bill of exceptions or otherwise to indicate that this matter was ever presented to the trial court. (*Darby v. Heagerty,* 2 Idaho, 282, 13 Pac. 85; *Heilner v. Brown,* 2 Idaho, 263, 12 Pac. 903.)

SULLIVAN, C. J.—This is a suit in equity, wherein the respondent, who was the plaintiff in the court below, seeks to compel the specific performance of a contract of sale for the newspaper plant known as the "Silver Blade," which is situated at Rathdrum, Kootenai county. The complaint contains the necessary allegations, and pleads the contract *in haec verba.* The contract is as follows:

"Made this tenth day of February, 1897, between John F. Yost, of Rathdrum, Kootenai county, Idaho, party of the first part, and J. C. Brady, of Rathdrum, Kootenai county, Idaho, party of the second part, witnesseth: That the said party of the first part, in consideration of one dollar cash in hand to him paid by the second party, and of the covenants hereinafter mentioned, hereby agrees to grant, bargain, sell, and convey to said party the following described property, to wit: All the material and fixtures appertaining to the office of the 'Rathdrum Silver Blade,' and used in the publication and printing of said news-

paper, which said material is located in Rathdrum, Kootenai county, Idaho, and is the property of said first party according to an inventory of said property given by said first party to said second party, with inventory hereto attached, and marked 'A.' The terms of said sale shall be as follows: $700 payable on or before the delivery of possession by first party to said second party of the property mentioned herein, and $500 payable within one year hereafter, which said payment of $500 shall be secured by a promissory note and chattel mortgage of said property, said promissory note to bear interest at the rate of ten per cent per annum. The said second party agrees to secure to the said first party publication of certain legal notices, and in consideration thereof it is hereby agreed that seventy per cent of the amount received by said first party for such publications shall be considered as so much money paid in pursuance of this contract, and applied as a part of the aforesaid $700. The said first party further agrees that he will make a reasonable bid for the county printing for Kootenai county, Idaho, to be let by the county commissioners thereof in April, 1897, and, in the event he is awarded the contract therefor, that in compliance with this contract by the said second party in the payment of the said $700 as aforesaid he will assign the said contract to the said second party, if upon investigation the said contract is found to be assignable, and, in case the said contract is found to be not assignable, then, in that event, he hereby agrees to sublet the contract to said second party at the same price and on the same terms that the said contract may be awarded to him, the said first party. It is further agreed that the said first party shall be held by this contract to the performance of the covenants therein at the option of the said second party at any time between the tenth day of April, 1897, and the tenth day of May, 1897. It is further agreed that in case the said second party does not comply with the terms of this contract in the payment of the sum mentioned herein, that said second party shall be entitled to no compensation for securing said legal notices for publication as hereinbefore stated. It is further agreed that said first party shall assign to said second party all sums due and owing first party on subscription

to the 'Silver Blade' on the day of the transfer, together with all sums due or to become due for legal notices, the publication of which shall not at the time of the said transfer be completed except thirty per cent of the amount that may become due for the publication of such of the aforesaid legal notices secured by said second party as shall not at that time be completed.   In witness whereof the parties to these presents have hereunto set their hands and seals the day and year first above written.

(Signed)     "JOHN F. YOST.

(Signed)     "J, C. BRADY."

Defendant demurred to the complaint on the ground that it did not "state facts sufficient to constitute a cause of action for want of equity."   The demurrer was overruled, and parts of the answer were stricken out on the motion of respondent, and an amended answer was filed.   The answer specifically denies many of the allegations of the complaint, and confesses and seeks to avoid others, so that the material issues of the complaint are put in issue.   The answer avers that the contract above set forth was entered into for the purpose of carrying out and enforcing the unexecuted provisions of a former contract, which was executed in duplicate, and delivered in duplicate to both the plaintiff and defendant on the eighth day of February, 1897.   It is also averred that by the express terms of said last-mentioned contract, for the consideration of one dollar cash in hand paid, and for the further considerations that the plaintiff would obtain for the defendant the publication of certain classified lists of mineral lands referred to in said agreement, and would file a bid for the county printing of Kootenai county, Idaho, to be let by the board of county commissioners of said county in the month of April, 1897, and that the plaintiff would abstain from filing a bid for said printing, the appellant would, according to the terms of said contract, sell and convey to the plaintiff the personal property described in the complaint.   It is also averred that one of the considerations of said contract was that plaintiff would exert his political and personal influence with the register of the United States land office, at Coeur d'Alene City, Idaho, to secure for the defendant for publication in said newspaper certain notices of classified lists of mineral lands,

and that the said lists of mineral lands referred to in the contract of February 8, 1897, are the "legal notices" mentioned in the contract set forth in the complaint. The cause was tried by the court with a jury. The jury was directed to find a special verdict upon particular questions of fact submitted to them by the court in writing. Eight questions asked by the plaintiff and seven asked by the defendant were submitted to the jury, and answered by them. Thereafter, on argument by respective counsel, the cause was submitted to the court for decision and judgment. The court made and filed findings of fact and entered judgment in favor of the plaintiff decreeing the specific performance of said contract. A motion for a new trial was overruled. This appeal is from said order and from the judgment.

The main contentions of appellant are (1) that the contract sued on is contrary to public policy, and therefore void; and (2) that equity will not decree a specific performance of a contract for the sale and delivery of personal property.

As to the first contention, is said contract against public policy, and therefore void, conceding that the contract was merely a substitute for the contract of February 8, 1897? The last-mentioned contract contains the following terms, which are sufficient to show clearly said contention: "The terms of said sale shall be as follows: Seven hundred ($700) dollars payable on or before delivery of possession by first party to second party of the property mentioned herein, and five hundred ($500) dollars payable within one year thereafter, which said payment of five hundred ($500) dollars shall be secured by a promissory note and chattel mortgage on said property, said promissory note to bear interest at the rate of ten (10) per cent per annum. The second party hereby agrees to secure to the said first party the publication of certain classification lists of mineral lands as made by the mineral land commissioners for the state of Idaho, which said lists are now filed or are to be filed in the United States land office at Coeur d'Alene City, Idaho, and in consideration thereof it is hereby agreed that seventy (70) per cent of the amount received by said first party for such publications shall be considered as so much money paid in pur-

suance of this contract, and applied as a part of the aforesaid
seven hundred ($700) dollars. And it is further agreed be-
tween the parties hereto that until such time when the first of
the aforesaid lists shall have been handed to the first party for
publication this contract shall be inoperative. The said first
party further agrees that he will make a reasonable bid for the
county printing for Kootenai county, Idaho, to be let by the
county commissioners thereof in April, 1897, and, in the event
he is awarded the contract therefor, that on compliance with
this contract by said second party in the payment of the said
seven hundred ($700) dollars as aforesaid he will assign the
said contract to the second party, if upon investigation said con-
tract is found to be assignable, and, in case said contract is
found to be not assignable, then, and in that event, he hereby
agrees to sublet said contract to said second party at the same
price and on the same terms that the said contract may be
awarded to him, the said party." As to the stipulation of the
respondent to secure for the appellant the publication of cer-
tain classified lists of mineral lands, the record shows that one
James Graham was the register of the United States land office
at Coeur d'Alene City, Idaho. The register of said land office
was required by the laws of Congress and the rules and regula-
tions of the land department of the government to have said
lists of mineral lands published. The publication thereof was
not to be let by bid to the lowest bidder. There were no bids
authorized in the letting of said contracts for publication of
said lists. The register had the absolute right to select any
newspaper of general circulation in said Kootenai county in
which to publish such lists. The government paid a fixed price
for such publications, and the direction to the register was to
publish such lists in a newspaper of general circulation in said
county. That said newspaper was one of general circulation
in said county is not questioned by the appellant. That the
respondent secured said lists for publication as agreed is not de-
nied, and the means and methods used in securing said lists is
shown by respondent's own testimony and that of James
Graham, the said register. Mr. Brady (respondent) testified
on his own behalf as follows: "I did secure those lists. I met

Mr. Graham in Rathdrum. I asked him about the patronage from the land office, and told him I contemplated purchasing this plant, and asked him if I could get the notices for publication from that office. He replied that he had always aimed to put those notices in the hands of the papers nearest the lands that were classified; that all the lands near Rathdrum had been classified; that he had given, I think, three to the 'Kootenai Herald,' three to the 'Coeur d'Alene Press,' one or two to the 'Hope Examiner,' and one or two to the 'Other Side,' published at Coeur d'Alene City. Well, I asked him if it was not about time for the 'Silver Blade' to have one, and he said that he didn't know whether there would be any more or not; might be a list for January, but he did not think there would be for February or March, as the commissioners were not working. And he said, if there was a list for January, that he would give it to me for publication in the 'Silver Blade.' I think Mr. Graham told me that the price to be paid for the publication of those lists was fixed already by the government, and Mr. Yost told me they were also." Mr. Graham testified on behalf of the plaintiff, and in substance stated that he, as register of the United States land office, awarded the publication of said mineral land classification lists, and that in so doing he was not influenced thereto by any influence exerted on him by the respondent with a view of procuring the transfer of the property described in the agreement sued on herein. The foregoing are substantially the facts showing how and by what means the contract for the publication of the said lists of mineral land was made. It is contended that it is shown in the record that an agreement was entered into whereby the respondent was to attempt for a compensation to influence a public officer in the performance of a duty or the execution of a power, and that such agreement is contrary to public policy, and void; and cites *Tool Co. v. Norris,* 2 Wall. 45; *Oscanyan v. Arms Co.,* 103 U. S. 261, and other cases. Those cases were essentially different from the case at bar. There is nothing in the record showing the means and manner by which said contract was obtained that even hints at the use of sinister or corrupt means. The respondent asked the register of said land office about the

patronage from that office, and informed him that he contemplated purchasing the "Silver Blade" printing office and plant, and asked him if he could get the legal notices for publication for that office.    The register replied that he had always aimed to put such notices in papers nearest the lands that were classified; that the lands near Rathdrum had been classified; that he had given printing to four different newspapers in said county, naming them.    Thereupon respondent asked him if it was not about time for him to give some printing to the "Silver Blade." He replied that he did not know whether there would be any more such notices for publication, but, if there were, he would give the publication thereof to the "Silver Blade."    Taking into consideration the fact that the price to be paid for such publication had been fixed by the land department of the government, that no bids were required in the letting of the contracts for printing such notices, and the fact of the register giving each of the newspapers in the county a part of such patronage, and all of the facts as shown by the record, it seems to us that the arrangement between the register and respondent, whereby the "Silver Blade" received for publication said notices, was in no sense illegal, or in conflict with public interest.    (*Winpenny v. French,* 18 Ohio St. 469; *Stanton v. Embrey,* 93 U. S. 548; *Salinas v. Stillman,* 14 C. C. A. 50, 66 Fed. 677; *Trist v. Child,* 21 Wall. 441; *Chesebrough v. Conover,* 140 N. Y. 382, 35 N. E. 633.)    If the court could see wherein this agreement could in any manner put the government of the United States to any loss, or would tend in any manner to corrupt the administration of governmental affairs, or if it were proven that the government official had been unduly influenced or corrupted by this agreement, or that it falls within the strictness of Justice Field in the opinion in *Tool Co. v. Norris, supra,* this court would without hesitation hold this agreement contrary to public interest, and void.    There is nothing in the agreement or evidence that shows, or tends to show, the object or purpose was to induce an officer to act partially or corruptly.

By one provision of said contract appellant agrees to make a bid for the county printing of Kootenai county, and, in event he is awarded such printing, he will assign the contract for

said county printing to the respondent, if the contract is assignable, and, in case it is not, he agrees to sublet such printing to the respondent at the same price and on the same terms that said contract may be awarded to the appellant, provided the respondent performed his part of said contract. The appellant avers in his answer that said stipulation was an agreement to suppress competition in obtaining the contract for public printing, which averment is a conclusion. It is no doubt a well-settled rule that any agreement respecting public contracts to be awarded to the lowest bidder, which tends to deprive the government of the advantage of competition in bidding, is unlawful and void. Said provision in the contract had no tendency to prevent competition in bidding for the county printing. The respondent contemplated purchasing the newspaper and printing plant owned by the appellant, and by the terms of the contract of purchase the appellant agreed to bid for the county printing, and, in case he secured the contract, he agreed to assign it to respondent, provided he purchased the newspaper plant of appellant. There was no intention of preventing competition in bidding therefor, so far as the record shows.

The appellant's second contention is that equity will not decree a specific performance of a contract for the sale and delivery of personal property, and especially when the contract bears the least taint of illegality. The latter part of this contention is disposed of by the former part of this decision, where it is held that the contract is in no sense illegal, or in conflict with public interest. As a general rule, equity will not decree a specific performance of a contract relating to chattels. But there are well-defined exceptions to the general rule, and we think the facts of this case bring it within the exceptions. Equity will decree a specific performance of a contract when damages at law will not afford a complete and adequate remedy. In the case at bar the contract was for sale of a certain newspaper business, printing plant, and material used in said business, and contemplated the continuance of said business. This case, we think, comes within the well-recognized exceptions to said general rule, and a specific performance must be decreed,

as damages at law would not afford as complete and adequate a remedy as a decree for specific performance.

It is contended that the court disregarded several specific findings of the jury, and that the judgment must be reversed for that reason. This is an equitable action for specific performance of a contract, and the defendant was not entitled to a jury, as a matter of right. The jury was required to pass upon certain questions of fact, and its findings were only advisory to the court. After a most careful examination of the evidence, we think the court was justified in disregarding the special findings of the jury referred to. Under the provisions of section 4369 of the Revised Statutes, the appellant contends that he was entitled to a jury trial as a matter of right, that section declaring, *inter alia,* that in actions for the recovery of specific personal property an issue of fact must be tried by a jury, unless a jury is waived. That section recognizes a distinction between law and equity actions. Under it the former must be tried by a jury unless a jury is waived. (See 3 Deering's Cal. Code Civ. Proc., notes to sec. 592.) In equitable actions in this state neither party is entitled to a jury as a matter of right. (*Christensen v. Hollingsworth,* ante, p. 87, 53 Pac. 211.) As the record contains no error, the judgment of the court below must be affirmed, and it is so ordered. Costs of this appeal are awarded to the respondent.

Huston and Quarles, JJ., concur.