### JAMES T. BARNES and others *v.* JAMES BARNES.

Where several owners of land lying on a swamp, some above and some below a mill situated on it, belonging to A bought and paid for it, and took a deed to themselves in fee with the site and all rights appurtenant thereto, to be held in trust for the benefit of the lands of which they were the owners, and to prevent any mill dam or other obstruction from being placed across said swamp, to the damage and injury of their said lands, *it was held,* that the said purchasers had a right to prevent the erection of a mill dam across the swamp one hundred and fifty yards below the site of the old mill, by A or by one who purchased his land, and who proposed to build the dam partly on the land purchased of A and partly on land which he owned before.

As a general rule every contract ought to be enforced specifically, but an exception to this rule is permitted when damages can be recovered at law, which are an adequate satisfaction, and the exception is confined to cases in which there is a certain measure of damages, and money must be a satisfactory compensation.

The cases of *Williams* v. *Howard,* 3 Murph. 74, and *Kitchen* v. *Herring,* 7 Ire. Eq. 190, cited and approved.

This was a civil action brought by the plaintiffs to enjoin the defendant from erecting a dam and mill at a place one hundred and fifty yards below the site of an old mill. At the trial at the Fall Term, 1870, of the Superior Court of WILSON County, before his Honor, *Judge Clarke,* an order for a perpetual injunction was made, and the defendant appealed. The case is sufficiently stated in the opinion of the Court.

*Bragg & Strong,* for defendant.
*Moore & Gatling,* for the plaintiffs.

RODMAN, J. In 1859, the plaintiff Barnes and the defendant, and others, made a deed, in which, after reciting that William Felton owned a mill on White Oak Swamp, and that some of the other parties owned lands on said Swamp above the site of the mill, and others of them owned

lands on the Swamp below the mill; that the mill was an injury to the lands; and that for the purpose of removing and of preventing the erection of a mill on *said site* for the future, and as a consideration for said mill and its privileges, &c., the said parties had each paid to William Felton, a certain sum; the said Felton conveyed to the other parties his said mill together with the site and all rights, &c., appurtenant thereto, in fee, " to be held in trust for the benefit of the land of which they (the said parties) are now individually and severally seized and possessed, and to prevent any mill dam or other obstruction to be built, placed or raised *across said Swamp*, to the damage and injury of their lands, and to carry out and secure said trust, each to the other binds himself, his heirs, executors and administrators, to stand to and abide by the provisions of this deed, in their true intent and meaning," &c.   The plaintiffs allege that since the execution of said deed the defendant has purchased the land on White Oak Swamp which William Felton then owned, and that he has commenced building a dam across the Swamp at a place (according to the answer) one hundred and fifty yards below the site of the former mill, from land which he owned at the date of the deed, to the land which he bought of Felton; and that the dam will irreparably damage the lands of the plaintiffs; and prays a specific performance of the contract, and an injunction against the threatened violation of it.

The answer admits the allegations of the complaint; but resists the relief sought, because, 1. The new dam is not on the site of the old one.   2. The plaintiffs can have adequate redress in damages.

1. We think it clear from the words of the contract that the parties intended to stipulate against the erection of a dam, not only upon the exact site of the old one, but across any part of the Swamp which was in their control at that time.   Any less liberal construction of it, would not satisfy the words of the covenant and would make it illusory.   The

defendant taking the lands of Felton with notice of his covenant, is equally bound by it in respect to those lands.    Batten *Spec. Perf.,* 368, cases cited.

2. It is a mistake to suppose the rule to be that a contract will not be specifically enforced in any case when a plaintiff can obtain damages at law.    On the contrary the general rule is, as it is the dictate of justice, that every contract shall be specifically performed.    An exception to the rule is, that when damages can be recovered at law, which are an *adequate* satisfaction.    But this is for the sake of convenience only, and because in such a case a plaintiff can have no interest in requiring a specific performance.    The exception is confined to cases in which there is a certain measure of damages, and where money must be a satisfactory compensation.    In sec. 717, art. 1, Story Eq. Jur., Redfield's edition, will be found a description of the extent of equity jurisdiction for the specific enforcement of contracts.    It is there said: "The restriction stands, therefore, not so much upon any general principle *ex equo et bono,* as upon the general convenience of leaving the party to his remedy in damages at law, where that will give him a clear and full compensation."    On a contract to deliver so many bushels of corn, or so many sheep, it is clear that a complete remedy may be given in damages, because the vendee can always go in the market and buy corn or sheep.    But if there be any thing in the nature of the article contracted for by reason of which it could not be purchased in the ordinary market, as if it be slaves, or an ancient horn, or a unique china vase, or shares in a particular railway, the exception would not be applicable, and the general rule of a specific enforcement would apply.    *Williams* v. *Howard,* 3 Mur. 74.    *Falche* v. *Gray,* 5 Jur. N. S. 645.    As was said in *Kitchen* v. *Herring,* 7 Ire. Eq. 190, land has always been peculiarly regarded among Anglo Saxon people, and contracts for the sale of land, or for leases, and indeed it may be said all contracts affecting

lands, will always be specifically enforced, if there be nothing in the circumstances to forbid it.   1 Story Eq. Jur. S. 746.

In this case the character of the damage threatened to the lands of the plaintiff made it incapable of any certain measurement.

The drowning of his lands—even partially, might render their occupation so uncomfortable and unprofitable as to compel the abandonment of some portion of them.   Contracts to use the lands of the contractor in a certain way, have been enforced in many instances.   *Tux* v. *Moxhay*, 2 Phillips 774, 1 Story Eq. Jur. S. 721.

3. Further it is said that the contract of the defendant was not supported by the consideration which went to Felton alone, but we consider the respective contracts of the parties a consideration sufficient to support each other.

There is no error, the judgment below is affirmed.

PER CURIAM.                    Judgment affirmed.