(February 27, 1905.)

## RIDENBAUGH v. THAYER.

[80 Pac. 229.]

SPECIFIC PERFORMANCE.

1. Where it is shown by the complaint, which is not denied, that by written contract T. agreed to furnish R. at a place named in the contract two thousand five hundred cords of wood, R. to furnish all money necessary to chop, haul, boom and deliver such wood; that in pursuance of such contract R. did, at all times, comply with all the terms and conditions of the contract; that after the delivery of two hundred and fifty cords of wood by the administratrix of the estate of T. and after such administratrix had agreed to carry out the terms and conditions of such contract, she refused to further comply with the contract unless R. would release five hundred cords of such wood from delivery to R., he having furnished her large sums of money to complete the contract of T., *held*, that a decree for specific performance will be enforced in a court of equity.

(Syllabus by the court.)

APPEAL from the District Court of Ada County. Honorable George H. Stewart, Judge.

Action to enforce specific performance of a contract. Judgment for plaintiff, from which defendant appeals. Judgment affirmed.

The facts are stated in the opinion.

S. L. Tipton, Karl Paine and Charles M. Kahn, for Appellant.

All the authorities cited in their brief are cited and commented on in the opinion.

Fremont Wood, for Respondent, cites no authorities not found in the opinion.

STOCKSLAGER, C. J.—The plaintiff commenced his action in the district court of Ada county to compel the specific performance of a certain contract alleged to have been entered into between plaintiff, doing business as the Shaw Lumber Company and Orin Thayer. The contract was in writing; a copy of it is exhibit "A" to plaintiff's complaint herein, and is dated the fifth day of October, 1903.

It is next shown by the complaint that on or about May 23, 1904, Orin Thayer died intestate, and thereafter, about June 15, 1904, the defendant in this action was appointed administratrix of his said estate by the probate court of Ada county, and that said letters of administration have never been revoked.

The fourth allegation of the complaint is that said Orin Thayer, in accordance with the terms of the contract, proceeded to procure the necessary cordwood along Moores creek and Grimes creek in Boise county, Idaho; that said wood was procured by said Thayer by purchase, cutting and removal, and the plaintiff, during the lifetime of said Thayer, advanced for the use of said Thayer for carrying on the work of chopping, purchasing and securing said wood, the sum of $4,500, the same being the amount demanded by said Thayer for said work; that at the time of the death of said Thayer said wood was in the timber where cut and it became necessary to move the same in order to utilize the high water in Grimes creek and Moores creek for running said cordwood; that after the death

of said Thayer it was agreed between plaintiff and said defendant, both in her personal capacity and afterward in her representative capacity as administratrix, that the terms of said written contract should be carried out, and said cordwood cut and procured as aforesaid, delivered under the terms of said contract to plaintiff, and in pursuance of said last-mentioned agreement and understanding between plaintiff and defendant, this plaintiff has advanced for the account of said defendant in hauling and driving said cordwood, the sum of about $4,250, making in the aggregate the sum of $8,750 advanced by plaintiff under said contract, but plaintiff is informed and believes, and therefore, on his information and belief, alleges, that there is less than two thousand cords of wood subject to delivery under said contract, and that he has already paid more than the contract price therefor.

The fifth allegation is that plaintiff has well and truly kept and performed each and every provision of the contract on his part; nevertheless, defendant, after commencing the delivery of said wood in the yard of this plaintiff, has caused the delivery thereof to be stopped, and has demanded of plaintiff that he release from the terms of said contract five hundred cords of said wood, and upon the refusal of plaintiff to consent to said release, and after plaintiff had paid all of said money on said contract price, said defendant has refused to deliver more wood, has abandoned the said wood drive in the Boise river, and is now permitting the same to gather and accumulate in great quantities against plaintiff's boom in said river and in other places along said river, and unless given immediate protection and removed from said boom and cared for, the said boom will be broken and said cordwood will become nearly a total loss.

The sixth allegation is that under and in accordance with said contract plaintiff furnished the boom provided for therein, and the same is anchored upon the Boise river near the foot of Eighth street, in Boise City, but said defendant, through her agents, has taken possession of said wood and said premises and refuses to protect or permit plaintiff to protect the same, and defendant also refuses to run said wood or per-

mit this plaintiff to run the same, and deliver the same into his yard, although plaintiff has offered to care for and haul, or assist in hauling said wood.

The seventh allegation is that about two hundred and fifty cords of said wood have been delivered in the yard according to said contract; that between three hundred and four hundred cords are now against and in the immediate vicinity of said boom, and the remainder of said wood, about thirteen hundred or fourteen hundred cords, between said boom and a point about seven miles up the Boise river.

The eighth allegation is that at noon on the 30th inst. defendant stopped all work upon said wood drive, and the wood in the river is now entirely unprotected except by the boom aforesaid; that said boom will give way in case of a slight rise in the river, which is liable to occur at any minute, either from showers or from lowering of water in the irrigating ditches, where the diversion points are above said boom, and unless said boom is given almost immediate attention and said wood removed, the same will go out and said wood become a total loss. Plaintiff is informed and believes, and therefore upon information and belief alleges, that the banks near the northern anchorage of said boom have commenced to wash and that the piers holding said boom have commenced to settle on account of the great pressure thereon, and unless said wood is immediately removed, said boom will wash out and said wood pass down the river beyond the control of either of the parties hereto.

The ninth allegation is that plaintiff has offered to incur all expenses of running, driving, holding and removing said wood in addition to the payments already made, but defendant has declined to permit plaintiff to in any way interfere with, have or protect said wood, etc.

The tenth allegation is that the estate of Orin Thayer now is, and was at the time of his death, insolvent, and defendant, administratrix, personally and in her representative capacity, is insolvent and unable to respond in damages for failure to deliver said wood, and for that reason plaintiff avers that he has no plain, speedy or adequate remedy at law; that unless compelled by an order of this court to immediately deliver said

wood and protect and care for the same, now in the Boise river, said wood will become a total loss and plaintiff will suffer great and irreparable injury thereby. Plaintiff then tenders and offers with his own teams and his own men to complete the driving of said wood at the actual cost thereof, and to pile said wood in his yard in separate piles so that the wood now undelivered may be kept segregated from all other wood.

The eleventh alleges that the writ of replevin or claim and delivery would be unavailing herein on account of the great expense which would necessarily be incurred by an officer in gathering up, hauling and caring for said property, and on account of the insolvency of said estate said expense would be an additional expense account and all fall upon the plaintiff without any recourse therefor upon the defendant.

This complaint is followed by a prayer for specific performance, and an order of injunction compelling defendant, her agents and attorneys, to drive, boom and deliver said cordwood, and upon their failure so to do to permit plaintiff, his agents and attorneys together, to drive, boom and deliver said wood.

Exhibit "A" provides that Orin Thayer, for and in consideration of the promises and agreements of said Shaw Lumber Company hereinafter set forth, agrees to deliver to said Shaw Lumber Company in the summer of 1904, as soon as the season and the state of the water in the Boise river and its tributaries will permit, two thousand five hundred cords of wood, more or less, the same cut from live timber, four feet long and convenient size, from pine or fir. Said cordwood to be in all respects good, sound, smooth, straight, merchantable wood. Said cordwood and the whole thereof is to be delivered and corded in straight, compact piles, ten feet four inches high, in the yard of said Shaw Lumber Company, in Boise, Idaho, four inches to be allowed for settling.

"In consideration of the foregoing, the said Shaw Lumber Company, agreed to pay the said Orin Thayer the sum of $4.25 per cord of one hundred and twenty-eight feet—cubic—as follows: The said Shaw Lumber Company is to advance for the use of said Thayer such sum of money as may be necessary,

from time to time, to carry on work of chopping, hauling and driving said cordwood while the work is being prosecuted. Any balance that may be due said Thayer to be paid when all of said cordwood is delivered and piled in good condition in the yard of said Shaw Lumber Company as hereinbefore set forth.

"The Shaw Lumber Company further agrees to furnish for the use of said Thayer, in securing and driving said cordwood, all booms, boats, tools and utensils connected with the wood business now owned by the said Shaw Lumber Company, the same to be furnished to the said Orin Thayer free of charge for driving said wood for said Shaw Lumber Company as hereinbefore mentioned. The said Orin Thayer agrees to put said boom, etc., in the place where found, at his own expense and in good condition. The Shaw Lumber Company further agrees to pay any and all taxes that may be levied and assessed against said cordwood and the whole thereof."

To this complaint a demurrer was filed, to wit: "That said complaint does not state facts sufficient to constitute a cause of action." On September 3, 1904, this demurrer was overruled. Defendant failing to further plead, on the eighth day of December, 1904, evidence was introduced on behalf of plaintiff and judgment rendered finding all the allegations of the complaint to be true, that plaintiff had paid out, under the terms of the contract, $10,282.25, and has received eighteen hundred and seventy and one-fourth cords of wood; that plaintiff is entitled to the specific performance of the contract on the part of Mary Thayer as administratrix. That the preliminary, mandatory injunction heretofore issued be continued and made perpetual, and that plaintiff is the owner of and entitled to the possession of the cordwood described in the complaint.

On this record it is insisted by counsel for appellant that respondent's right to an injunction, being dependent upon his right to a decree of specific performance, reduces the issue to the single question, Is respondent entitled to such decree? "Respondent contends that he is entitled to have the contract specifically enforced for two reasons: First, that the defendant and the estate of which she is administratrix are insolvent.

Secondly, that respondent has no plain, speedy or adequate remedy at law."

It is then insisted that this action cannot be maintained—there being no equity in the bill urging that the rule of law is well established that contracts relating to personal property of the nature of cordwood will not be specifically enforced. "That mere insolvency furnishes no independent grounds for equity jurisdiction." "That respondent's remedy is an action for damages at law." We agree with counsel for appellant that in actions to enforce the specific performance of contracts of the character before us in the absence of other equities, a mere declaration that the defendant is insolvent or that he has no plain, speedy or adequate remedy at law will not entitle him to aid from a court of equity, his remedy being an action for damages. This being true, the important question to determine is whether plaintiff by his complaint brings himself within the rule for equitable relief. We find very respectable authorities on both sides of this question; however, we think it is settled beyond reasonable controversy that as a general rule courts of equitable jurisdiction will not decree the specific performance of contracts relating to chattels.

Mr. Pomeroy, in his excellent work on Specific Performance of Contracts (second edition), 66, discusses this question, and in section 48 says: "Where the rights of the party plaintiff under a contract will be fully satisfied by an account of profits and a payment of the sum found due thereby, and there is no obstacle to the recovery of such amount at law, a suit for a specific performance cannot be maintained." In section 47 under the head of "Contracts Concerning Chattels," the same author says: "The description of the general nature of specific performance and of the equitable right to it will be completed by a brief discussion of the principle that it cannot be granted when the legal remedy of damages is sufficient, that is, practicable and adequate. . . . . It is the fundamental principle regulating the exercise of this equitable jurisdiction that whenever the legal remedy of damages is sufficient equity will not interfere and the specific performance will be refused."

Our attention is called to *Brady v. Yost,* 6 Idaho, 282, 55 Pac. 545. It is said in this case that, "As a general rule equity will not decree a specific performance of a contract relating to chattels. But there are well-defined exceptions to the general rule. Equity will decree a specific performance of a contract when damages at law will not afford a complete and adequate remedy."

Mr. Waterman in his work on Specific Performance of Contracts, in section 88, discussing the question, says: "It is incumbent upon the plaintiff to show that he cannot be indemnified in damages for the breach of the contract, and if he omit to allege, or it does not appear from the facts disclosed in the bill, that he has not a complete remedy at law, the defendant may demur to the bill on that ground."

In *Senter v. Davis,* 38 Cal. 450, Mr. Justice Sanderson, speaking for the court, says: "The jurisdiction of a court of equity to decree specific performance does not turn at all upon the question whether the contract relates to real or personal property, but altogether upon the question whether the breach complained of can be adequately compensated in damages. If it can, the plaintiff's remedy is at law only; if not, he may go into a court of equity which will grant full redress by compelling specific performance on the part of the defendant."

In volume 26, American and English Encyclopedia of Law, 103, in discussing personal property contracts, the author says: "a. It has been stated as a general rule that equity will not enforce contracts relating to personal property, but it will recognize that this rule is general only in so far as it may be stated generally that for the breach of a contract relating to chattels, damages at law are adequate, and that therefore whether or not equity will enforce personal property contracts is after all dependent upon the same doctrines as control the jurisdiction of chancery in other cases." "b. Contracts for the sale of goods possessing an easily ascertainable market value, as cotton or wheat or ordinary merchandise easily found in the market, will not be specifically enforced; the only relief for the breach of such contracts lies in damages at law."

Mr. Pomeroy, in volume 3, sections 1402, 2156 (second edition), Equity Jurisprudence, in discussing the doctrine of equity courts where chattels are involved, says: "On the contrary, the doctrine is equally well settled that equity will not in general decree the specific performance of contracts concerning chattels because their money value recovered as damages will enable the party to purchase others in the market of like kind and quality." It will be observed that all those authorities are based on the theory that a judgment at law may be enforced and the plaintiff placed in the position to take the money thus obtained on his judgment and purchase like articles in the market. The exception to this rule runs all through the authorities that if the articles contracted for possess rare value or cannot be obtained in the open market, then a court of equity will assume jurisdiction and by its decree enforce the specific performance of the contract. We are of the opinion that if it is shown by the complaint that a judgment at law would be valueless to the plaintiff by reason of the inability of the defendant to respond in damages, then he is entitled to equitable relief, if other equities are shown in his bill.

This brings us to a discussion of the tenth allegation of the complaint, "That the estate of Orin Thayer now is, and at the time of his death was, insolvent, and that the said administratrix, both personally and in her representative capacity, is insolvent, and unable to respond in damages for failure to deliver said wood." This allegation is admitted to be true by the demurrer; hence the question is: Has the plaintiff brought himself within the jurisdiction of the court to grant equitable relief when this allegation is construed in connection with the contract and in the light of all other alleged equities in the case? We have seen that insolvency standing alone will not authorize the specific enforcement of a contract for the sale of chattels, and unless the plaintiff shows other equities in his bill he cannot have his contract enforced in equity.

It is earnestly urged by counsel for appellant that this is the controlling question in the case; in other words, that unless the plaintiff is entitled to equitable relief on the ground of insolvency alone, he cannot recover, as there are no other equi-

ties disclosed by the complaint.  We are inclined to agree with this contention, and (if it be true that insolvency stands alone as the only real reason urged in plaintiff's complaint for equitable relief, then he must fail in this action.  The following authorities cited by counsel for appellant support this contention: 26 Am. & Eng. Ency. of Law, 2d ed., 19; *Strange v. Richmond F. & C. R. Co. et al.* (Va.), 93 Fed. 74, 75; *Lasar v. Baldridge,* 32 Mo. App. 366; *Townsend v. Fenton,* 32 Minn. 484, 485, 21 N. W. 726; *Miller v. Lorentz et al.,* 39 W. Va. 174, 19 N. E. 391; *McLaughlin v. Piatti,* 27 Cal. 463; *Crawford v. Bradford,* 23 Fla. 406, 2 South. 783; *Heilman v. Union Canal Co.,* 37 Pa. St. 100; *Cincinnati etc. R. R. Co. v. Washburn,* 25 Ind. 261; *McConnell v. Dickson,* 43 Ill. 99.

Counsel for respondent insists that "the contract being a mutual one, one party agreeing to deliver two thousand five hundred cords of wood, the other agreeing to furnish the necessary money to carry on the work of chopping, hauling and driving said cordwood while the work was being executed; that by the terms of the agreement there was a trust relation existing between plaintiff and Thayer from the time the first money was advanced by plaintiff."

Mr. Justice Wolverton, of the Oregon supreme court, in a very recent decision in *Livesley v. Johnston,* reported in 76 Pac. 946, discusses, among others, the one before us for determination.  In this case the contract was for the delivery of hops raised by the defendant for five consecutive years, and provided when and where such hops were to be delivered, how baled, etc.  The plaintiff agreed to advance a certain specified sum of money each year in the months of April, May and June, and at picking time four and one-half cents per pound for picking purposes.  The contract provided for a lien upon the property for all such advances.

The plaintiff alleged in the complaint that as part consideration for the contract they had paid defendant the sum of $1 and surrendered up and delivered to defendant certain promissory notes due to plaintiff aggregating in value $650.  Defendant refused to deliver the hops and notified plaintiff he would no longer be bound by the contract.  The complaint alleged

that defendant is wholly insolvent and unable to respond in damages for the breach of his agreement and plaintiffs have no plain, speedy and adequate remedy at law. With reference to the power of a court of equity to decree specific performance of a contract involving chattels, it is said: "It may be said that equity will not ordinarily grant relief for the specific delivery of chattels, because it is generally considered that the plaintiff has a plain, speedy and adequate remedy at law for damages for withholding them. The interposition of equity is withheld except upon this particular ground, as its jurisdiction is ample to decree the specific performance of an agreement relative to personalty as it is one relative to realty." In support of this doctrine he cites *Sullivan v. Tuck,* 1 Md. Ch. 59; *Frue v. Houghton,* 6 Colo. 318; *Doff v. Fisher,* 15 Cal. 376; *Mechanics' Bank v. Seton,* 1 Pet. 299, 7 L. ed. 152; *Mason v. Patterson,* 74 Ill. 191; *Kirksay v. Fike,* 27 Ala. 383, 62 Am. Dec. 678; *Barnes v. Barnes,* 65 N. C. 261. The opinion then proceeds as follows: "The remedy at law, however, which will bar such relief must be as practical and efficient to the end of justice and its prompt administration as in equity, or, to employ the language of Mr. Chief Justice Fuller in *Cormley v. Clark,* 134 U. S. 338, 339, 10 Sup. Ct. Rep. 554, 557, 33 L. ed. 909: 'The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstance' "; citing *South Portland L. Co. v. Munger,* 36 Or. 557, 54 Pac. 815, 60 Pac. 5; *Benson v. Keller,* 37 Or. 120, 60 Pac. 918; *Wollenberg v. Rose,* 41 Or. 316, 68 Pac. 804; *Brett v. Warnick,* 44 Or. 511, 102 Am. St. Rep. 639, 75 Pac. 1061.

"When, therefore, an award of damages would not put the party seeking equitable relief for the delivery of personalty in a situation as beneficial as if the agreement were specifically performed, or where compensation and damages would fall short of the redress to which he is entitled, the jurisdiction is properly invoked; otherwise not; citing *Frue v. Houghton, supra; Avery v. Ryan,* 74 Wis. 591, 43 N. W. 317; *McGowin v. Remmington,* 12 Pa. St. 56, 51 Am. Dec. 584."

Discussing the question of insolvency it is said: "And it may be further observed that the insolvency of the party against whom relief is sought, standing alone, will not confer jurisdiction to enforce specific performance in this class of cases; there must be some other element or principle or equity cognizant upon which the remedy is invoked." (Citing authorities.) "The fact of insolvency, when combined with other causes of equitable interposition, may, however, become a potent or even controlling factor in determining the fact of jurisdiction." The principle is well settled by Mr. Justice Thompson in *Heilman v. Union Canal Co.*, 37 Pa. St. 100, 104, as follows: "The fact, if it be so, that this remedy may not be successful in realizing the fruits of a recovery at law, on account of the insolvency of the defendants, is not of itself a ground for equitable interference. The remedy is to be looked at. If it exists and is ordinarily adequate, its possible want of success is not a consideration. It is not intended here to say that insolvency is never a consideration moving a chancellor. It frequently does, but not alone. The equitable remedy must exist independently. In balancing cases, it is a consideration that gives preponderance to the remedy; citing *Clark v. Flint*, 22 Pick, 231, 33 Am. Dec. 733; *Parker v. Garrison*, 61 Ill. 250."

In closing on this branch of the case, Mr. Justice Wolverton says: "We are not to be understood as holding that the defendant may not be required to perform the labor or carry on the project of producing the crops, but, after they have been produced and the plaintiffs have contributed to their production as required by the terms of the agreement, or have at all times been ready and willing to do so and have only been deterred therefrom by the acts of Johnston, they are entitled to have specific performance in delivery of the amount of the crops so agreed to be delivered."

In *Johnson v. Brooks*, 93 N. Y. 337, Mr. Justice Danforth discusses the question of specific performance of a contract relating alone to chattels, and says: "But while it may be conceded that in general a court of equity will not take upon itself to invoke such decree where chattel property alone is concerned, its jurisdiction to do so is no longer to be doubted, and it is

believed that no good reason exists against its exercise in any case where compensation in damages would not furnish a complete and satisfactory remedy; citing *Phillips v. Berger,* 2 Barb. 609; *Cushman v. Thayer Mfg. Jewelry Co.,* 76 N. Y. 365, 32 Am. Rep. 315; Pomeroy on Specific Performance, secs. 16-18; Story's Equity Jurisprudence, secs. 716, 731. Indeed this learned author (Story's Equity Jurisprudence, sec. 717a) says: "It is against conscience that a party should have a right of election whether he would perform his covenant or only pay damages for the breach of it; but, on the other hand, he adds there is no reasonable objection to allowing the other party, who is injured by the breach to have an election either to take damages at law or to have a specific performance in equity."

In the case of *Cushman v. Thayer Mfg. Jewelry Co.,* 76 N. Y. 365, 32 Am. Rep. 315, the plaintiff brought action to compel defendant to transfer upon its books certain shares of stock to plaintiff and to issue a new certificate of the same to her. Miller, J., speaking for the court, says: "While the general rule is for courts of equity not to entertain jurisdiction for a specific performance on the sale of stock, this rule is limited to cases where a compensation in damages would furnish a complete and satisfactory remedy." A recovery of damages would furnish inadequate compensation; the remedy by *mandamus* cannot be invoked as the authorities hold, and there can be no question that in a case of this kind a court of equity alone can grant the proper relief.

In *Clark v. Flint,* 22 Pick. 231, 33 Am. Dec. 733, decided in 1839, it is said in the syllabus: "A remedy by action for damages against a person actually insolvent is not a plain, adequate and complete remedy at law, so as to deprive the court of jurisdiction in equity." (22 Am. & Eng. Ency. of Law, 989, 992.)

The case of *Parker v. Garrison,* reported in 61 Ill. 250, we find one of the most interesting and instructive cases to which our attention has been called; it is said: "What had the complainant in the way of any adequate remedy at law? Garrison was insolvent. Any recovery of damages against him would have been worse than bootless, as it would only have entailed upon the complainant an additional loss in the form of a bill of costs."

We do not deem it necessary to cite additional authorities or to discuss the case further. It is shown by the complaint that plaintiff at all times performed each and all the terms and conditions of the contract up to the time of the death of Orin Thayer. After the defendant was appointed administratrix of his estate plaintiff continued to furnish money to aid her in the fulfillment of the contract. This he continued to do until he had paid a sum of money far in excess of his agreement. Then when the wood is in the river, or ready for delivery, more than six hundred cords short of the contract, plaintiff is informed that unless he release five hundred cords that no additional wood will be delivered. This was at a time when plaintiff had received about two hundred and fifty cords of wood on the contract and had paid out over $8,000, in money, nearly one-half of which had been paid to the defendant. Under the authorities cited all through this opinion and the facts as disclosed by the complaint, should the plaintiff permit the wood to break and destroy the boom and float down the river, thus being a total loss to plaintiff as well as the estate of Orin Thayer and the defendant, or should equity aid him in securing the wood and protecting the property that he had more than paid for? Whilst we are not in favor of extending aid by injunction, beyond what seems to be its necessities, we are at a loss to know what other remedy plaintiff had in this case. He was compelled to act promptly or lose his money by reason of the failure of defendant to comply with her part of the contract, which she agreed to do in order to secure the money from plaintiff to carry on the work of delivery of the wood. We find no error in the order overruling defendant's demurrer to the complaint. Judgment is affirmed, with costs to respondent.

Sullivan, J., and Ailshie, J., concur.