(No. 4751. November 21, 1927.)

R. A. BOWMAN, Respondent, v. L. R. ADAMS, TOM BEECH and WESTERN BOND & MORTGAGE COMPANY, a Corporation, Appellants.

[261 Pac. 679.]

TRUSTS—SALES—EXECUTORY CONTRACTS FOR SALE OF CHATTELS—PASSING OF TITLE—LIENS—SPECIFIC PERFORMANCE—DAMAGES—MARKET VALUE — MEASURE OF DAMAGES—INSOLVENCY—VENDEE'S ABILITY TO PAY QUESTION FOR JURY — TROVER AND CONVERSION — SPECIAL DAMAGES—NOTICE.

1. Under contract whereby sheep were sold to be fattened and strictly fat sheep were to be repurchased by seller, buyers had complete title, not burdened with trust in seller's favor, though price was not fully paid, and company taking mortgage on sheep from buyers with knowledge of seller's contractual rights nevertheless took sheep free from any trust estate or equitable interest of original seller, under C. S., secs. 5689, 5691, 5728.

2. Where person selling sheep to be fattened for market under contract to repurchase strictly fat sheep refused to accept sheep back from buyers on inspection before delivery and demanded right to cut and weigh them, legal title passing to buyers never passed back to original seller by resale, where buyers were to make delivery on resale, under C. S., secs. 5689, 5691.

3. Person selling sheep to be redelivered when fattened for market retained no lien on sheep for balance of unpaid purchase price after delivery thereof to buyers, under C. S., sec. 5728.

4. Person selling sheep temporarily for fattening for market had no equitable lien thereon by virtue of having paid buyers' part of repurchase price, balance of which was to be paid on resale of fattened sheep.

Points Decided.

5. Equitable interest of vendee or buyer in property to be sold or conveyed arises from right to specific performance, and title of vendor or seller is considered as burdened with a trust in favor of vendee or buyer.

6. Though vendee under contract for sale of real property or personal property of peculiar nature has equitable interest resulting from right to specific performance, buyer of ordinary chattels which have market value has adequate legal remedy and is not entitled to specific performance, and therefore has no equitable interest in property sold.

7. Person selling sheep temporarily for purpose of having them fattened and repurchasing such as became strictly fat *held* to have adequate remedy at law for damages on buyers' breach of resale contract, to have no right to specific performance of contract and no equitable interest in sheep to be repurchased.

8. Contract for sale and delivery of chattels, which are essential in specie to plaintiff and which defendant alone can supply, may be specifically enforced.

9. Specific performance of contract to sell personal property will not be granted even where chattel is special and unique, if its pecuniary value can be readily ascertained so that remedy of damages is adequate.

10. Insolvency of party to contract for sale of chattels does not of itself warrant equitable interference by specific performance, where damages at law are otherwise adequate.

11. Person selling sheep under agreement to repurchase such of the sheep as should be fattened for market *held* not entitled to recover from buyer's mortgagee for conversion by receiving proceeds of sheep which seller refused, as seller had neither title nor right to possession, under C. S., secs. 5689, 5691.

12. Plaintiff suing for conversion must show either title to thing converted or right of possession.

13. In action for damages by seller of sheep against buyers, for buyers' breach of contract to fatten sheep and resell them to seller, evidence of plaintiff's ability and willingness to pay purchase price on resale *held* to make issue for jury.

14. Normal measure of damages for breach of sales contract by seller where title has not passed is, under C. S., sec. 5739, difference between contract price and market or current price of property at time it should have been delivered.

15. In action for breach of sales contract, consequential damages consisting of lost or prospective profits must grow out of circumstances made known to seller at time of entering into contract, and later disclosure thereof is insufficient to warrant recovery of such profits as damages.

16. In action by person selling sheep for breach of buyer's contract to fatten sheep and resell them, plaintiff *held* not entitled to consequential damages consisting of lost or prospective profits, where plaintiff's particular method of handling sheep was not made known to defendant until after time of execution of contract.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. W. A. Babcock, Judge.

Action for damages. Judgment for plaintiff. *Reversed and remanded.*

Walters & Parry, J. R. Keenan and Homer C. Mills, for Appellants.

Contracts in question were contracts of sale. (*Gills v. George*, 28 Ohio C. C. 583.)

---

Publisher's Note.

3. Lien of vendor of personalty, see note in 83 **Am. St.** 451. See, also, 24 **R. C. L.** 127.

6. See 25 **R. C. L.** 228.

8. Personal property contracts as enforceable, see notes in 5 **Ann. Cas.** 269; 10 **Ann. Cas.** 934; **Ann. Cas.** 1915D, 788; **L. R. A.** 1918E, 597. See, also, 25 **R. C. L.** 293.

10. See 25 **R. C. L.** 231.

12. Title on which trover maintainable, see note in 1 **Am. Dec.** 585. See, also, 26 **R. C. L.** 1131.

14. Measure of damages against vendee for refusing to perform his contract to purchase, see note in 67 **Am. Dec.** 275. See, also, 24 **R. C. L.** 116.

15. Recovery of loss of profits in action for breach of contract to sell, see notes in 42 **Am. Rep.** 461; 60 **Am. Rep.** 488; **Ann. Cas.** 1914D, 36. See, also, 8 **R. C. L.** 501.

16. Liability for consequential damages, see note in 36 **Am. Rep.** 382.

See Damages, 17 **C. J.**, sec. 77, p. 748, n. **3.**

Sales, 35 **Cyc.**, p. 282, n. 52, p. 303, n. 32, p. 491, n. 58, p. 612, n. 78, p. 633, n. 32, p. 644, n. 37, p. 650, n. 97.

Specific Performance, 36 **Cyc.**, p. 555, n. 96, p. 556, n. 18, p. 557, n. 19, p. 564, n. 47.

Trover and Conversion, 38 **Cyc.**, p. 2044, n. 56.

Trusts, 39 **Cyc.**, p. 75, n. 12.

Vendor's lien for unpaid purchase price is lost by delivery of the goods. (C. S., 5728; *Magnuson v. Stiehm,* 40 N. D. 141, 168 N. W. 613; *In re Friend,* 278 Fed. 153.)

After delivery the vendor has no trust rights against the property. (*Hoven v. Leedham,* 53 Minn. 95, 31 A. L. R. 574, 189 N. W. 601.)

Under agreement to sell unascertained articles by description out of a larger mass, and under an f. o. b. contract of sale, no property in the goods passes to the vendee until delivery. (C. S., secs. 5689, 5691 (Rules 2 and 5); *Idaho Products Co. v. Bales,* 36 Ida. 800, 214 Pac. 206.)

Vendors may give a valid chattel mortgage upon full legal title where the contract is executory and no property in the goods has passed to vendee. (*Snohomish Iron Works v. Guhr Lumber Co.,* 57 Wash. 381, 106 Pac. 1124; 11 C. J. 658.)

That vendee has paid part of the purchase price does not postpone lien of chattel mortgage given by vendors upon the goods prior to passing of property therein. (*Lighthouse v. Third National Bank,* 162 N. Y. 336, 56 N. E. 738; *Smith v. Wisconsin Inv. Co.,* 114 Wis. 151, 89 N. W. 829.)

Offer to pay less than the debt is not a tender.

Without either title or right of possession of the property there is no conversion and no right to follow proceeds. (*Portland Seed Co. v. Clark,* 35 Ida. 44, 204 Pac. 146.)

The buyer suing for damages for breach by the seller of the contract of sale must, when payment was to be made at time of delivery, show that he was ready, able and willing to make payment. (35 Cyc. 620.)

Giving of conflicting instructions is error. (*Smith v. City of Rexburg,* 24 Ida. 176, Ann. Cas. 1915B, 276, 132 Pac. 1153; *Shallis v. Fiorito,* 44 Ida. 489, 240 Pac. 932.)

Seller is not required to afford buyer opportunity of inspection prior to tender. (C. S., sec. 5719, subd. 2.)

Vendee in possession of goods not paid for may give a chattel mortgage thereon which will be prior to claims of vendor against the property though mortgagee knows that

the purchase price is unpaid. (*Kane v. Manley,* 63 Mo. App. 43; *Finke & Nasse v. Pike,* 50 Mo. App. 564.)

Shad L. Hodgin, Paris Martin, W. E. Cameron and H. C. Hazel, for Respondent.

"From the date of the contract (to purchase) it (equity) looks upon the beneficial interest as in the vendee, and the legal title only as in the vendor. By construction the vendor holds the legal title in trust for the vendee . . . . and *a fortiori,* if the purchaser has paid the purchase money the vendor becomes a mere trustee of the legal title for the purchaser; so if the purchaser has paid part of the purchase money, the vendor becomes a trustee to the extent of the money paid." (Perry on Trusts, 6th ed., sec. 231; *Branstetter v. Mann,* 6 Ida. 580, 57 Pac. 433; Williston on Sales, 2d ed., sec. 141.)

"A purchaser with notice is liable to the same equity, and is bound to do that which the person he represents would have been required to do but for the conveyance." (*Whitehorn v. Cranz,* 20 Neb. 392, 30 N. W. 406.)

"It is obvious that a mortgagor can convey by mortgage only that interest which he possesses." (11 C. J. 428.)

BRINCK, Commissioner.—On September 6, 1922, plaintiff, being then the owner of certain sheep, entered into an agreement with the defendants Adams and Beech, which is embodied in two written instruments designated in the record as exhibits "A" and "B." By exhibit "A," plaintiff agreed to sell and deliver to said defendants, on or before September 25, 1922, 5,500 ewes for the sum of five cents per pound, $2,500 to be paid in cash, the balance of the purchase price to be paid upon delivery of said ewes. By exhibit "B," said defendants agreed to sell and deliver to plaintiff on or before February 15, 1923, the same ewes at seven cents per pound. The repurchase price was to be paid by plaintiff paying $2 per head upon the execution of the agreement, receipt whereof was therein acknowledged, and the balance upon the delivery of the ewes. Exhibit "B" provided,

among other things, that Adams and Beech should deliver said ewes to plaintiff on February 15, 1923, f. o. b. cars at Twin Falls, and that strictly fat ewes were to be received on the contract after 90 days from its date, as fast as strictly fat; that said ewes should contain no cripples; that they should at the time of delivery be strictly fat, free from disease, and pass state and federal inspection, and should be free from liens and encumbrances.

By mutual agreement, the number of sheep to be covered by these contracts was increased to 13,002 head, and pursuant to the terms of exhibit "A," all were delivered to Adams and Beech within a few days after the execution of the contracts.

In order to perform their part of the agreement, said defendants arranged to borrow both the purchase price of the sheep and the necessary funds for feeding them during the period of the agreement from the Western Bond & Mortgage Company. The evidence tends to show that this was made known to the plaintiff during the negotiations leading up to the execution of the contracts. Out of the funds so borrowed Adams and Beech paid to plaintiff the purchase price provided in exhibit "A," less $2 per head, which was withheld by Adams and Beech, and acknowledged by them in exhibit "B," as an advance payment on the repurchase price to be paid by plaintiff, this method of handling the advance payment to be made by plaintiff being agreed upon between the parties. The portion of the purchase price paid plaintiff was paid by means of drafts drawn by Adams and Beech on the Western Bond & Mortgage Company to the order of plaintiff, upon the back of each of which was a bill of sale from plaintiff to Adams and Beech of the sheep for which the drafts were respectively given in payment, together with an assignment from Adams and Beech to the mortgage company of all their right, title and interest in the property. The drafts bearing upon their reverse such bills of sale and assignments, were then delivered to plaintiff, and by him indorsed, and deposited in a bank, and the proceeds received by him. Soon after Adams and Beech

received the sheep; they executed to the Western Bond & Mortgage Company a chattel mortgage upon all of said sheep, securing the payment of the purchase price advanced by it, advances to be made by it for feeding the sheep, and an additional indebtedness previously owing it by Adams and Beech. The mortgage was duly recorded in the proper counties.

After the expiration of 90 days from the date of execution of the contracts, there were various conferences and negotiations between plaintiff and Adams and Beech relative to the delivery to plaintiff of such sheep as were then fat, culminating about December 23, 1922, in Adams and Beech cutting out and weighing some 3,200 sheep then in the feed yards at Twin Falls, which they claimed were strictly fat and in a deliverable condition, and they thereupon notified plaintiff that such sheep were ready for delivery. Plaintiff appeared on December 26th, and inspected the sheep, and protested to Adams and Beech that not all of the sheep so cut out and weighed by them were strictly fat, and demanded the right to cut and weigh them again. Adams and Beech refused to allow him to do this. Upon his refusal to accept them as cut and weighed by Adams and Beech, they shipped some 2,200 of them to market, and turned the proceeds over to the Western Bond & Mortgage Company.

Plaintiff thereupon brought this action against Adams and Beech for injunction against further loading of the sheep, and praying specific performance of his claimed right to cut and weigh the sheep.

Various proceedings were had in the action, including the appointment of a receiver for the remainder of the sheep, his taking possession thereof from the Western Bond & Mortgage Company, which had in the meantime received the same by surrender from Adams and Beech under the terms of the mortgage, the discharge of said receiver and redelivery of said sheep to the Western Bond & Mortgage Company upon its furnishing a bond for $50,000, and the bringing of said company into the suit as a defendant. The mortgage company sold the sheep and received the

proceeds. The case was finally tried upon plaintiff's complaint against Adams and Beech, alleging breach of contract for the delivery of the sheep, and praying damages therefor, and a so-called cross-complaint by plaintiff against the Western Bond & Mortgage Company alleging conversion of the sheep and praying the same damages against it for the conversion as were prayed against Adams and Beech for breach of contract. The damages alleged included alleged excess in the value of the sheep over the sum plaintiff was to pay for them, prospective profits plaintiff claimed he could have made had the contract been performed, and some freight rebates which it is alleged he would have received under a "feed in transit" rule of the railroad company, if he himself had been permitted to ship out the sheep. The jury found for the plaintiff in the sum of $26,004, and all defendants appeal, both from the judgment and from an order denying a motion for a new trial.

Many errors are alleged, the consideration of a few of which will dispose of the case.

[1-4] As to the mortgage company, the principal question is as to the propriety of an instruction whereby the jury were informed that the title of Adams and Beech was a qualified title, burdened with a trust in favor of the plaintiff, and that if the mortgage company obtained bills of sale or mortgages with knowledge of the contractual relations of the parties, under exhibits "A" and "B," it took them subject to plaintiff's contractual rights and his title and trust estate, and was liable to plaintiff for losses sustained by him in its taking possession of the sheep and selling them. In support of this instruction, plaintiff, as respondent here, contends that under the circumstances of the case, he had "a sort of trust estate or equitable interest" in the sheep, or some sort of an equitable lien upon them, which the mortgage company was bound to respect. He does not contend that legal title to the sheep was not in Adams and Beech at all times after the delivery and acceptance by them, nor could such claim be made. The property in the sheep passed to Adams and Beech at the latest upon their delivery

to them by the plaintiff; under the contract, exhibit "B," legal title never passed back to plaintiff. Section 19 of the Uniform Sales Act (C. S., sec. 5691) provides that, unless a different intention appears, if a seller is bound to do something to the goods to put them into a deliverable state, the property does not pass until such thing be done, or if the contract requires the seller to deliver goods to the buyer, it does not pass until the goods have been delivered. Both these provisions preclude the passing of title in this case, even if the sheep which were the subject of this contract can be considered as ascertained, and hence not within the provisions of C. S., sec. 5689, though plaintiff was required to accept only such sheep as were strictly fat and otherwise complied with the contract. Nor as vendor under exhibit "A," with the purchase price not fully paid him, did the plaintiff retain any lien on the sheep after delivery to Adams and Beech (C. S., sec. 5728); nor as vendee under exhibit "B," with the purchase price paid in part, did he have an equitable lien on them (1 Jones on Liens, 3d ed., secs. 40, 68).

[5, 6] The only theory upon which respondent cites any authorities in support of his contention is the rule applied in cases of executory contracts of sale of real estate, that a vendor of real estate holds the title in trust for the vendee. (Perry on Trusts, 6th ed., sec. 231.) This rule is not in general applied to sales of personal property, but is merely a right recognized under contracts of sale of real estate by reason of the peculiar nature of real property whereby equity has come to recognize a right to the specific performance of such contract. Where a contract is susceptible of specific performance in equity, the vendee has an equitable interest in the property to be conveyed, and it is considered that the vendor's title is burdened with a trust in favor of the vendee. The same doctrine is applicable in sales of personal property where goods are of a peculiar nature and value to the vendee of the property, so that pecuniary damages at law are inadequate. In such cases, it is considered that the purchaser, having a right to the very thing itself,

45 Idaho—15

has an equitable interest in it. But in the sale of ordinary chattels, which have a market value, the legal remedy of damages is adequate, and there is no necessity for equitable interference, and for such specific performance. (Pomeroy on Specific Performance, 3d ed., sec. 47; *Brady v. Yost,* 6 Ida. 273, 55 Pac. 542.) In such case, where no lien is expressly granted to the vendee by the contract, the vendee has no equitable interest in the thing itself.

[7–9] Plaintiff seeks to bring himself within a familiar exception to the general rule against the specific performance of a contract for the sale of chattels by alleging and testifying that at the time when defendants refused to deliver the sheep there was not available a like number and kind of sheep which plaintiff might have bought. A contract for the sale and delivery of chattels which are essential in specie to the plaintiff, and which defendant can supply, while no one else can, can be specifically enforced. (Pomeroy on Specific Performance, 3d ed., sec. 15.) But in the present case, the only sheep which plaintiff was to receive were strictly fat sheep, ready for market, and intended by him to be immediately resold. They were in nowise indispensable to him, since he sought only to resell them and reap a profit, the amount of which was alleged and determinable. In his complaint, he alleges the actual value of the sheep to be $90,000. Even when a chattel is special and unique, if its pecuniary value can be readily ascertained, so that the remedy of damages is adequate, specific performance will not be granted. So, where the plaintiff has contracted to sell the article to a third person (*Southern Iron Co. v. Vaughan,* 201 Ala. 356, 78 So. 212, L. R. A. 1918E, 594), or alleges the actual value of the article thus putting an exact estimate upon the amount of damage he will suffer by breach of the contract (*Marthinson v. King,* 150 Fed. 48; *Ryan v. McClane,* 91 Md. 175, 80 Am. St. 438, 46 Atl. 340, 344, 50 L. R. A. 501), specific performance will not be awarded. (Pomeroy on Specific Performance, 3d ed., sec. 12.) We think, therefore, that under the allegations in this case, damages at law are shown to be adequate. [10] This

situation does not appear in *Ridenbaugh v. Thayer,* 10 Ida. 662, 80 Pac. 229, relied on by plaintiff, where specific performance was decreed, the subject matter of the contract of sale being a large quantity of cordwood, which had been produced by defendant's intestate under a contract with the plaintiff and with funds furnished by plaintiff under the contract.   Plaintiff also alleges, but does not prove, insolvency of Adams and Beech; but even if proved, this standing alone, does not warrant equitable interference, as is pointed out in *Ridenbaugh v. Thayer, supra.*

[11, 12]  The mortgage company certainly cannot be held for conversion, since plaintiff had neither the title nor right of possession (*Portland Seed Co. v. Clark,* 35 Ida. 44, 204 Pac. 146); nor can we discover any theory whereby, because of a lien or other equitable interest in the property, plaintiff can maintain an action on the case against the mortgage company, since no equitable interest existed.   The instruction was erroneous; and the complaint in fact failed to state a cause of action against the mortgage company, which is one of the contentions made by it, in its motion for new trial.

[13]  Appellants Adams and Beech contend that the verdict is unsupported by the evidence in that there is no proof that plaintiff was able, ready and willing to pay the purchase price, and that there is no evidence to support the allegations of damage.

There was evidence as to plaintiff's ability to perform, and the question was one for the jury (*McCormick v. Tappendorf,* 51 Wash. 312, 99 Pac. 2), under proper instructions.   No instruction appears to have been given upon the subject.

[14–16]  The only evidence introduced as to damages was as to prospective profits which plaintiff expected to make by taking the sheep as they became deliverable under the contract, shipping them to feed yards near Chicago, shearing them and selling the wool, feeding the sheep a few days until they were in good condition and could be placed

upon a favorable market; and that, if so handled, the price he would have received for them would be more than the sum he would have had to pay Adams and Beech for them. Of course, the normal measure of damages for breach by the vendor of a contract of sale, where the title has not passed, is as provided by C. S., sec. 5739, being the difference between the contract price and the market or current price of the property at the time when it ought to have been delivered, as to which no evidence was introduced in this case. Consequential damages, consisting of lost or prospective profits, if those here claimed would have been in any event recoverable as such, must grow out of circumstances made known to the vendor at the time of entering into the contract. Plaintiff sought to bring himself within this rule by alleging and testifying that he had made known to Adams and Beech in November his intention as to the manner in which he proposed to handle the sheep; but such special circumstances must be within the contemplation of the parties at the time of making the contract, and a later disclosure thereof is insufficient to warrant recovery of such profits as damages. (3 Williston on Contracts, 2421; 17 C. J. 748; 1 Uniform Laws Ann. 247; *Brownsville v. Tumlinson* (Tex. Civ. App.), 179 S. W. 1107; *American National Bank v. Barley*, 219 Mich. 482, 189 N. W. 22; *Pope v. Ferguson*, 82 N. J. L. 566, 83 Atl. 353.) The evidence as to damages, relating wholly, as it does, to such consequential damages, which under the facts proven were not recoverable, is insufficient to support the verdict against Adams and Beech.

We recommend that the judgment be reversed and the cause remanded for new trial as to defendants Adams and Beech, in accordance herewith, and that costs be awarded to appellants.

Varian and McNaughton, CC., concur.

The foregoing is approved as the opinion of the court. The judgment is reversed as to all of the defendants, and

the cause remanded for new trial as to defendants Adams and Beech.   Costs awarded to appellants.

Budge, Taylor and T. Bailey Lee, JJ., concur.

Givens, J., dissents.

Petition for rehearing denied.