## POOR v. AMERICAN LOCOMOTIVE CO.
### No. 4971.

Circuit Court of Appeals, Seventh Circuit.
Nov. 16, 1933.

Franklin J. Stransky, Timothy I. Mc-Knight, and Edward J. McLaughlin, all of Chicago, Ill., for appellant.

Ralph F. Potter and George C. Bunge, both of Chicago, Ill., and Charles Dickerman Williams, of New York City, for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

One of the sharply controverted and determinative issues on this appeal is that of possession.

■ In the instant case it is clear that title to the goods upon which appellee claims a lien had passed to the Bradford Corporation. It is equally clear that the passing of title from vendor does not preclude the existence of a vendor's lien. In fact there is no need for a lien, and none exists, save when title has passed. See sections 53–56, of the Uniform Sales Act (Smith-Hurd Rev. St. Ill. 1933, c. 121½, §§ 53–56).

But in order to successfully assert a lien, there must be possession of some sort in the vendor. Bowman v. Adams, 45 Idaho 217, 261 P. 679; Centola v. Italian Discount, etc., Co., 135 Misc. 697, 238 N. Y. S. 245; In re Jarnol (D. C.) 283 F. 547.

The two questions are, then: What possession must the vendor have to successfully maintain a vendor's lien? Do the facts in the instant case disclose such possession in appellee, the vendor?

■ Appellant's counsel asserts that he has no quarrel with the rule announced by text writers and the courts. He contends, however, that judicial precedents are of little value to either party for each case must rest on its own fact basis. With the latter postulate, we agree. The issue turns upon the question of possession which is one of fact—of physical facts, supplemented by the understanding and intention of the parties whose acts are under review.

Apparently, we have a borderline case.

Appellant relies strongly and with much justification upon the clause in the agreement:

" * * * As parts are completed by the Manufacturer, they shall be promptly inspected and accepted by the Contractor's representative, *and shall be delivered to the Contractor* at the Manufacturer's Works at Richmond, Virginia. The Manufacturer **shall** furnish desk room to the Contractor's representative, who shall, when requested by the Manufacturer, aid by his advice and assistance in the manufacture, assembling and shipment hereunder of valves and parts thereof."

Meeting this evidence squarely, what is the meaning of the words "shall be delivered to the Contractor at the Manufacturer's Works at Richmond, Virginia"? If the word "delivered" be given the meaning sometimes attributed to it, namely, a complete transfer of possession, the discussion may well come to an end, and the issue settled in favor of appellant. But the same agreement provided:

"The Manufacturer *shall deliver all parts* ordered to railroad freight houses located in Richmond, Virginia, without additional charges, except for boxing and packing on the following basis: * * *."

Moreover, the stipulation of facts provides:

"As various items of goods stored in such room were sold by The Bradford Corporation, orders for shipping said goods were sent * * * one copy to its local representatives, and one copy to American Locomotive Company. Packing and shipping to purchasers were done by American Locomotive Company in the presence of the local representative of The Bradford Corporation, for which American Locomotive Company was to receive a fee of an agreed percentage as per said contract, plus postage when sent by mail, and said fees and expenses were billed on terms of net cash in thirty days. The goods were carried to the railroad freight station for shipment by American Locomotive Company trucks. When goods were shipped, American Locomotive Company prepared notices of shipment on a Bradford Corporation form which were signed by local representative of Bradford Corporation."

■ Both words "delivered" and "possession" may be used by contracting parties, not anticipating financial trouble, in a somewhat colloquial sense, which the courts must interpret in the light of the surrounding facts. The parties may be their own lexicographers, and the courts must interpret their contracts accordingly. However, they must give us their definition of the words and terms by them used; otherwise we will give them the meaning which the contracted action of the parties justifies and necessitates. Where the parties use one word, such as "delivered" in two places in their contract, and the legal consequences of the act in the two instances are **at** direct variance, we must look to the entire

agreement to ascertain whether the word divested the acting party of physical possession of the chattels and passed the same into the uncontrolled possession of the deliveree.

The word "delivered" has been construed in its relation to possession in at least two decisions. In the case of Lane v. Old Colony & Fall R. R. Co., 14 Gray (80 Mass.) 143, the court said:

"* * * A delivery may be complete for one purpose, and not for another. The cases cited by the plaintiffs' counsel to show what constitutes a complete delivery, are all cases which decide either what delivery is sufficient to pass the property as between vendor and vendee, or what is sufficient to terminate the liability of a carrier. A delivery may be complete, so far as either of those purposes is concerned, and yet be upon an implied condition as to payment; and upon failure to perform this condition, the right of possession of the party making the delivery will remain unimpaired. This is a familiar doctrine as between vendor and vendee."

In Perrine v. Barnard, 142 Ind. 448, 41 N. E. 820, 821, the court said:

"* * * The authorities sustain the proposition that there may be such a constructive delivery of the goods or chattels as will suffice to pass the title, but will not destroy the lien."

The confusion resulting from the use of a word which has or may have two legitimate meanings is not surprising. The delivery of a chattel to a buyer may be such as to pass title and yet not pass possession. Parties may use the word even when title is not passed, as when the chattel is delivered to a purchaser for a trial use or for demonstration purposes or to ascertain whether it could perform the work to which the purchaser desires to devote it. Then again, by use of the word "delivered" the parties may well mean that the manufacturer transfers to the deliveree not only title but the uncontrolled possession of the chattel. What the parties here meant must be gathered from the four corners of the document, illuminated and construed by the action of the parties.

 Our conclusion is that the parties in the section above quoted and relied upon by appellant referred to the act which transferred the legal title and that the other above-quoted provision of this agreement showed that the manufacturer retained such physical possession and control of the goods as to permit it to fill its written obligation to "deliver all parts ordered to the railroad freight hous-

es located at Richmond, Virginia, without additional charges."

Appellant's counsel earnestly argue that the manufacturer, in making these deliveries, acted as agent for the Bradford Company and therefore this proviso did not defeat his contention that possession passed under the previous proviso. We are unable to accept this view. The contract required the vendor to (a) manufacture the goods, (b) furnish a room free of charge for storage of goods manufactured and accepted, and (c) pack, box, and deliver the goods to the depot upon orders from the vendee. We can not say that in performing any part of its agreement, it was acting as the agent of the vendee. Rather must we conclude that it was carrying out its written agreement to manufacture and deliver the goods covered by the contract. Until the goods reached the freight depot, there was still *some* lawful possession in the vendor.

It is not necessary that the vendor's possession be complete or exclusive. Vendor's possession is sufficient to support a lien if the goods have not passed into the *uncontrolled possession of the vendee*.

We may approach this question of possession and vendor's lien from another angle. The property in question was without doubt at one time in the vendor's possession. If there be such a thing as a genesis of possession, it is in the maker—the manufacturer of the chattel—who in this case was also the vendor. Title and posesssion were both in it at one time. It could and did divest itself of title by sale and yet retain a lien—a lien for unpaid purchase price. This was done unless it parted with possession or "sold on credit." As it is conceded that the lien was not lost by sale on credit, its defeat must be traceable to a loss of possession.

Possession then was originally in the vendor. The goods thereafter never passed from under its roof. The key to the building was always exclusively in the vendor's pocket. By their agreement, the vendor was to deliver the goods when orders were received. It was holding such goods awaiting such orders when the vendee became insolvent and a receiver was appointed.

The most that can be said in favor of the transfer of complete possession is that the contract speaks of "delivery" twice. In one instance, it is consistent with uncontrolled possession in the vendee; while in the other instance, it presupposes possession in the vendor. Possession will be presumed to continue until it has changed, and in this case the physical facts, coupled with the conflicting

use of the word "delivered," support the presumption of continuity of possession.

There are two other provisions of the contract which have some bearing on this question. They bear on the parties' intention, which can not be ignored. Likewise, the character of the possession and the significance of the physical facts may be somewhat clarified by such understandings or intentions.

In the instant case the parties agreed that the goods should be manufactured in advance of order and that a thirty day requirement of stock should be carried. Another provision required that payment be made within thirty days from the date of the invoice. Is there any significance in the fact that the time limit in both cases is thirty days? Does it not signify that the parties contemplated that the goods be paid for prior to their going out of appellee's factory?

Little need be said on the second point which is based on the facts set forth in the stipulation as follows:

"* * * The Bradford Corporation from time to time gave to American Locomotive Company what was known as 'stock orders' whereby a larger number of valves or parts were manufactured than were needed for immediate sale * * *; and this placing of stock orders was to further carry out the contract provision that The Bradford Corporation should maintain a stock of manufactured parts equal to a thirty days supply based upon the consumption for the next preceding year; and on account of this provision and the placing and filling of stock orders from time to time, part of the goods remaining in storage when the Receiver was appointed had been there for several years and had been paid for in the usual course of business * * *. The rest of the goods were not paid for. The paid for goods and the unpaid for goods were mingled without distinction. As the goods were standard, it is now impossible to distinguish between the paid for and unpaid for goods."

Appellant's argument is that appellee "permitted and actually aided and assisted in intermingling valves furnished under the contract and fully paid for with the same kind of valves not paid for, in the same room, so that their identities could not be ascertained," and it thereby waived and lost its claim for a vendor's lien.

In disposing of this contention the significant fact is that the vendor's lien, if it exist at all, is traceable to a single contract. All goods were made under this original and only contract of the parties. Although it covered but one year, it was self-perpetuating and remained in force until one of the parties gave written notice of its election to terminate. Such written notice was never given.

Upon such a fact situation, the vendor's lien for the unpaid balance extended to all goods in its possession. It is immaterial that some of the goods were paid for and some were not. McElwee v. Metropolitan Lumber Co. (C. C. A.) 69 F. 302; Lane v. Old Colony & Fall River R. Co., 14 Gray (80 Mass.) 143; Bunney v. Poyntz, 4 B. & Ad. 568.

Appellee's unpaid balance was $37,366. The goods upon which it claimed a lien were not worth this amount. The sum of $25,000 was realized from their sale, to which sale the parties agreed. Appellee's inability to distinguish between the goods on hand which had been paid for and the goods recently manufactured and unpaid for, is of no consequence. Its lien, if any existed at all, was for the unpaid balance and extended to any goods in its possession, whether paid for or not.

As far as the lien was concerned, there could be no intermingling of property upon which a lien existed with property upon which no lien existed, for the reason that there was here no property involved which was free from the lien. It is unnecessary, therefore, to study or analyze the facts upon which appellant relies to sustain the statement that the vendor "intermingled" the lien goods with those unburdened by a lien.

The decree is affirmed.